**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.

NOBEL J. KELLY,
            *Defendant-Appellee.*

No. 04-30074

D.C. No.
CR-03-00066-WFN

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, Senior Judge, Presiding

Argued and Submitted
November 3, 2004—Seattle, Washington

Filed September 6, 2005

Before: Arthur L. Alarcón, William A. Fletcher, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge William A. Fletcher

## COUNSEL

Thomas O. Rice, Office of the United States Attorney, Spokane, Washington, for the plaintiff-appellant.

Kimberly Deate, Federal Defenders of Eastern Washington and Idaho, Spokane, Washington, for the defendant-appellee.

## OPINION

W. FLETCHER, Circuit Judge:

The government appeals Nobel Kelly's 120-month sentence for possession with intent to distribute over 5 grams of cocaine base. The government contends that the district court erred in finding that Kelly's 1998 Washington state conviction for attempting to elude a police vehicle was not a "crime of violence" under United States Sentencing Guideline (U.S.S.G.) § 4B1.2(a), and therefore not a predicate conviction for the career offender enhancement in U.S.S.G. § 4B1.1. We hold that Kelly's conviction for attempting to elude a police vehicle is not a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(a)(2), and we affirm the district court's decision on that issue.

I

Kelly pled guilty to possession with intent to distribute over 5 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). The government and Kelly agreed that U.S.S.G. § 2D1.1(c)(6) specifies a base offense level of 28 for possession with intent to distribute 21.1 grams of cocaine base, and that the base offense level would be increased by two levels under U.S.S.G. § 2D1.1(b)(1) because Kelly possessed a firearm during the offense. The government and Kelly also agreed that the parties would be free to argue whether the career offender enhancement in U.S.S.G. § 4B1.1 applied.

At the sentencing hearing held on January 15, 2004, the government argued that Kelly was subject to the career offender enhancement in U.S.S.G. § 4B1.1 because he had at least two prior convictions for a "crime of violence" as defined in U.S.S.G. § 4B1.2. Specifically, the government contended that Kelly's Washington state conviction for attempting to elude a police vehicle was a prior conviction for a "crime of violence" under U.S.S.G. § 4B1.2(a)(2) because it "involve[d] conduct that present[ed] a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). The Washington conviction stemmed from Kelly's 1998 guilty plea to attempting to elude a police vehicle in violation of Revised Code of Washington (RCW) 46.61.024. The version of RCW 46.61.024 under which Kelly was charged and convicted makes it a class C felony if a driver "willfully fails or refuses to immediately bring his vehicle to a stop and . . . drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop." RCW 46.61.024 (1983).

The district court found that Kelly's conviction for attempting to elude a police officer was not a conviction for a crime of violence that qualified as a predicate offense under

U.S.S.G. § 4B1.1. The district court calculated a total offense level of 27 and a criminal history category of IV, resulting in a guideline range of 100 to 125 months. Kelly was sentenced to 120 months in prison, followed by four years of supervised release. The government timely appealed Kelly's sentence.

## II

This court reviews de novo the district court's interpretation of the United States Sentencing Guidelines and its determination of career offender status under U.S.S.G. § 4B1.1. *United States v. Shumate*, 329 F.3d 1026, 1028 (9th Cir. 2003). The United States Sentencing Guidelines define a defendant as a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. Under U.S.S.G. § 4B1.2(a)(2)'s "catchall" clause, the term "crime of violence" encompasses not only such enumerated offenses as burglary of a dwelling, arson, and extortion, but also any offense, punishable by a prison term exceeding one year, that "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2).

[1] To determine whether a prior conviction qualifies as a predicate offense for a sentence enhancement, we use the categorical approach set forth by the Supreme Court in *United States v. Taylor*, 495 U.S. 575 (1990). *See, e.g.*, *United States v. Fish*, 368 F.3d 1200, 1202 (9th Cir. 2004). In *Taylor*, the Court held that the sentencing court should adopt a "categorical approach" to decide whether the defendant's Missouri bur-

glary conviction qualified as a "violent felony," a predicate offense under the sentence-enhancement provision of 18 U.S.C. § 924(e). 495 U.S. at 602. The categorical approach "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." *Id.* Therefore, the trial court should not "examine the facts underlying the prior offense." *United States v. Corona-Sanchez*, 291 F.3d 1201, 1203 (9th Cir. 2002) (en banc).

**[2]** However, the sentencing court may "go beyond the mere fact of conviction in a narrow range of cases" where a statute criminalizes some conduct that would qualify as a predicate offense and some conduct that would not. *Taylor*, 495 U.S. at 602; *see also Fish*, 368 F.3d at 1202-03. In such cases, a sentencing court follows what we have characterized as the modified categorical approach, under which the court performs a "limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime even though his or her statute of conviction was facially overinclusive." *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002).

We have used the categorical and modified categorical approaches in cases applying the definition of "crime of violence" contained in U.S.S.G. § 4B1.2(a)(2). *See Fish*, 368 F.3d at 1202-03 (in case involving catchall clause, applying categorical approach and assuming without deciding that modified categorical approach applies). We have also applied the *Taylor* approach to cases in which the defendant pled guilty instead of going to trial. *See United States v. Bonat*, 106 F.3d 1472, 1476 (9th Cir. 1997). We first apply the *Taylor* categorical approach.

A.   The *Taylor* Categorical Approach

The government contends that attempting to elude a police vehicle in violation of RCW 46.61.024 categorically consti-

tutes a crime of violence as defined in U.S.S.G. § 4B1.2(a). We disagree. Under the categorical approach, this court "must first look at the face of the statute itself and determine whether 'the fact of conviction and the statutory definition of the prior offense' demonstrate that [the defendant] could not have been convicted of an offense outside the guideline definition." *See Shumate*, 329 F.3d at 1029 (quoting *Corona-Sanchez*, 291 F.3d at 1203).

[3] The version of RCW 46.61.024 in effect when Kelly was convicted criminalized "wanton and willful disregard for the lives or property of others while attempting to elude a pursuing police vehicle." RCW 46.61.024.[1] To determine whether Kelly's conviction categorically constitutes a "crime of violence" under U.S.S.G. § 4B1.2(a)(2)'s catchall clause, we must determine whether a conviction under RCW 46.61.024 necessarily "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). If Kelly could have been convicted on the basis of conduct that did not present a serious potential risk of physical injury to another, his conviction cannot be a "crime of violence" under *Taylor*'s categorical approach.

We first turn to the Washington state courts' interpretation of RCW 46.61.024. Echoing the language of the statute, the Washington Supreme Court has held that in order to be guilty of a violation of RCW 46.61.024, " '[a] suspect must (1) willfully fail (2) to *immediately* bring his vehicle to a stop, (3) and drive in a manner indicating a wanton and willful disregard

---

[1]RCW 46.61.024 was amended effective July 27, 2003. The statute now provides: "Any driver of a motor vehicle who willfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony." RCW 46.61.024(1) (2003). We do not decide whether a conviction under the amended version of RCW 46.61.024 categorically constitutes a "crime of violence" as defined in U.S.S.G. § 4B1.2(a)(2).

for the lives or property of others (4) while attempting to elude police after being signaled to stop by a uniformed officer.' " *State v. Tandecki*, 109 P.3d 398, 400 (Wash. 2005) (citation omitted) (emphasis in original).

**[4]** The Washington Court of Appeals has uniformly held that the "wanton and wilful disregard" element of the statute does not include a requirement that anyone actually be endangered by the defendant's conduct. In *State v. Whitcomb*, 753 P.2d 565 (Wash. Ct. App. 1988), the trial court had set aside a guilty verdict under RCW 46.61.024 on the ground that the State had presented insufficient evidence of risk of harm. The Court of Appeals reversed, reinstating the verdict. It held:

> The State need not prove that anyone else [*i.e.*, anyone besides the defendant] was endangered by the defendant's conduct, or that a high probability of harm actually existed. Rather, the State need only show that the defendant engaged in certain conduct, *from which a particular disposition or mental state* — that of a "wanton or wilful disregard for the lives or property of others" — *may be inferred.*

*Id.* at 568 (emphasis added). In other words, the conduct of the defendant need not pose any actual danger or create a serious risk of harm to anyone. The conduct need only be such as to permit an inference about the defendant's "disposition or mental state." *Id.*; *see also State v. Treat*, 35 P.3d 1192, 1197 (Wash. Ct. App. 2001) (same); *State v. Refuerzo*, 7 P.3d 847, 851 (Wash. Ct. App. 2000) (same).

**[5]** It is true that the defendant's actual conduct must have been sufficient to permit an inference about his "disposition or mental state." Such conduct might have involved actual endangerment. But "might have" is not "must have." *Taylor* requires "must have." Moreover, under the Washington statute as it existed at the time of Kelly's guilty plea, such conduct could have involved either a person or property. The

federal "crime of violence" guideline, by contrast, requires endangerment of another person. Endangerment of property does not qualify under the guideline.

We recognize that the Fourth, Sixth, and Seventh Circuits have held that convictions under other states' eluding statutes are "crimes of violence" or "violent felonies" under federal law.[2] However, the reasoning in these cases is not applicable to our categorical analysis because they rely on (1) a statute that, unlike RCW 46.61.024, requires endangerment of others for conviction; (2) a modified categorical approach; and (3) an application of something other than *Taylor*'s categorical approach.

In *United States v. Howze*, 343 F.3d 919 (7th Cir. 2003), the Seventh Circuit construed a Wisconsin eluding statute that specifically required that the driver's flight or attempted eluding "interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians." *Id.* at 921. Thus a conviction under the Wisconsin statute, unlike a conviction under the Washington statute, necessarily entailed the creation of a serious potential risk of harm to others. The Sixth Circuit reached a similar result interpreting Michigan's eluding statute in *United States v. Martin*, 378 F.3d 578 (6th Cir. 2004), but only because it relied on a modified categorical approach to establish that the defendant's prior conviction necessarily endangered others. The indictment, to which the defendant pled guilty, charged a violation of the statute either by causing a "collision or accident" or by "fleeing in a 35-mile-per-hour zone (presumably a residential or school area)." *Id.* at 582. The Sixth Circuit noted that either of these circumstances "confirms the palpable risk of physical injury to others caused by flight under the statute." *Id.* There

---

[2]The definition of a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), is identical to that of a "crime of violence" under U.S.S.G. § 4B1.2(a)(2): a conviction "involv[ing] conduct that presents a serious potential risk of physical injury to another."

is nothing in the Sixth Circuit's opinion to indicate that a bad mental state is a sufficient basis for a conviction under the Michigan statute.

Finally, in *United States v. James*, 337 F.3d 387 (4th Cir. 2003), the Fourth Circuit held that a conviction under South Carolina's eluding statute constituted a conviction for a "violent felony." The court concluded:

> *Most cases* of failing to stop for a blue light [*i.e.*, a police vehicle light] involve the deliberate choice by the driver to disobey the police officer's signal. This disobedience poses the threat of a direct confrontation between the police officer and the occupants of the vehicle, which, in turn, creates a potential for serious physical injury to the officer, other occupants of the vehicle, and even bystanders.

*Id.* at 391 (emphasis added) (footnote omitted). In basing its analysis on the factual situation in "most cases," the Fourth Circuit was not engaging in a *Taylor* categorical analysis. Under *Taylor*, the question is not whether, based on the facts in "most cases" in which convictions are obtained under the statute, the conduct was a "violent felony" under federal law. Rather, the question is whether all conduct — including the most innocent conduct — prohibited by the state statute qualifies as a "violent felony." Further, even if we ignore the fact that a *Taylor* approach was not used, the Fourth Circuit relied on a South Carolina statute. The Fourth Circuit's opinion points to nothing in South Carolina case law specifying that conduct presenting an actual risk of harm is not required for a conviction, and that conduct from which a bad mental state may be inferred is enough.

**[6]** By contrast, the Washington state courts' construction of RCW 46.61.024 — first articulated in a decision predating Kelly's 1998 conviction by ten years and reaffirmed twice since then — tells us that Kelly could have been convicted for

conduct that did not satisfy U.S.S.G. § 4B1.2(a)(2)'s require-
ment of "present[ing] a serious risk of physical injury to
another." Because the Washington statute criminalizes con-
duct not covered by the Guideline definition, Kelly's convic-
tion is not a "crime of violence" under *Taylor*'s categorical
approach. We therefore proceed to apply the modified cate-
gorical approach.

### B.   The Modified Categorical Approach

As a threshold matter, it is unclear whether the modified
categorical approach should be applied in cases involving
U.S.S.G. § 4B1.2(a)(2)'s "catchall" or "otherwise" clause. In
*Fish*, we stated that "our prior case law is skeptical as to
whether we may deviate from the categorical approach to the
modified categorical approach in cases involving the 'catch-
all' clause." 368 F.3d at 1204; *see also United States v. Par-
ker*, 5 F.3d 1322, 1326 (9th Cir. 1993) (terming "highly
dubious" the government's assumption that the modified cate-
gorical approach applied to the "otherwise" clause). Because
Kelly's conviction does not constitute a crime of violence
under either approach, we assume without deciding that we
may use the modified categorical approach in this catchall-
clause case.

**[7]** Convictions that do not satisfy the categorical test must
meet the "rigorous standard" of the modified categorical
approach. *United States v. Sandoval-Venegas*, 292 F.3d 1101,
1106 (9th Cir. 2002). Under the modified categorical
approach, "the government has the burden to establish clearly
and unequivocally the conviction was based on all of the ele-
ments of a qualifying predicate offense." *United States v.
Navidad-Marcos*, 367 F.3d 903, 908 (9th Cir. 2004) (applying
modified categorical approach in context of U.S.S.G. § 2L1.2
sentencing enhancement). The sentencing court determines
whether the government has fulfilled its burden by looking to
"documentation or judicially noticeable facts that clearly
establish that the conviction is a predicate conviction for

enhancement purposes." *Sandoval-Venegas*, 292 F.3d at 1106 (quoting *United States v. Casarez-Bravo*, 181 F.3d 1074, 1077 (9th Cir. 1999)).

**[8]** We have specified the documents a sentencing court can rely on when a defendant has pled guilty. It is well settled that a charging document alone cannot establish the elements of conviction under the modified categorical approach. *See United States v. Wenner*, 351 F.3d 969, 974 (9th Cir. 2003); *see also Parker*, 5 F.3d at 1327. However, "the sentencing court may consider the charging documents in conjunction with the plea agreement, the transcript of a plea proceeding, or the judgment to determine whether the defendant pled guilty to the elements of the generic crime." *Corona-Sanchez*, 291 F.3d at 1211. A presentence report ("PSR") is insufficient to establish the elements of the crime if "all it does is recite the facts of the crimes as alleged in the charging papers" without indicating whether the information came "from a source that we have previously deemed acceptable, such as a signed plea agreement, a transcript of the plea hearing, or a judgment of conviction." *Id.* at 1212; *see also United States v. Franklin*, 235 F.3d 1165, 1172 (9th Cir. 2000) (holding that combination of charging documents and PSR did not establish that elements of defendant's prior convictions qualified as predicate offense under Armed Career Criminal Act, 18 U.S.C. § 924(e)).

**[9]** The government's modified categorical argument finds no support in the relevant documentation of Kelly's conviction: the charging document (in this case, an information), the transcript of the plea proceeding, the judgment of conviction, and the signed plea agreement. The information simply tracks the statutory language by charging that Kelly "did willfully fail and refuse to immediately bring his vehicle to a stop and did drive his/her vehicle in a manner indicating a willful and wanton disregard for the lives or property of others." The record contains no transcript of the plea proceeding. The judg-

ment of conviction does not set forth the elements of Kelly's conviction.

**[10]** Finally, Kelly's signed plea agreement fails to establish that Kelly was convicted of a crime of violence. The agreement merely lists the elements of the crime by quoting the words of the statute. The agreement includes a handwritten statement by Kelly, but the statement does nothing to establish that Kelly committed a crime of violence, or, indeed, that he even violated the Washington statute. Kelly wrote:

> On August 18 19198 [sic] I failed to stop for a police vehecle [sic] who signaled me to stop and was speeding why [sic] doing so. I stoped [sic] my veihecl [sic] ass [sic] soon as I saw the police. But I am pleding [sic] guilty to get the pled [sic].

We disregard the alleged factual circumstances of the crime — Kelly's alleged high rate of speed, lack of signaling, and abrupt lane changes — upon which the government relies. The government does not identify the source of these alleged facts in its brief, but it is clear that they were drawn from a Spokane Police Department affidavit introduced at the sentencing hearing. This police report also formed the basis of the factual account in the PSR for the current conviction. Under our prior case law, neither a police report nor a PSR based on a police report meets the "rigorous standard" of documentation required by the modified categorical approach.

**[11]** Nothing in the judicially noticeable record of conviction clearly and unequivocally establishes that Kelly pled guilty to the elements of a crime of violence. We therefore conclude that under the modified categorical approach, Kelly's conviction for attempting to elude a police officer is not a prior conviction for a crime of violence as defined in U.S.S.G. § 4B1.2(a).

**[12]** However, we have held that "where the district court did not treat the sentencing guidelines as advisory but the

defendant's sentence was not enhanced by extra-verdict find-ings," a nonconstitutional sentencing error has occurred. *See United States v. Ameline*, 409 F.3d 1073, 1084 n.8 (9th Cir. 2005) (en banc). We therefore order supplemental briefing to ascertain whether either party seeks a limited remand on the ground of nonconstitutional error. *Id.* at 1084 ("When faced with an unpreserved *Booker/Fanfan* error, the reviewing panel must first determine if an eligible party wants to pursue the subject.")

## III

**[13]** Because Kelly's conviction for attempting to elude a pursuing police vehicle is not a prior conviction for a crime of violence under U.S.S.G. § 4B1.2(a), it is not a qualifying predicate offense for career offender status under U.S.S.G. § 4B1.1. We therefore AFFIRM the district court's decision that Kelly does not qualify for career offender status under the Guidelines. We ORDER the parties to notify the court within 14 days of the filing of this opinion if either wants to pursue an *Ameline* remand.

   **AFFIRMED.**