**UNITED STATES of America, Plaintiff—Appellee, Cross–Appellant**

v.

**Rodney A. FISHER, Defendant—Appellant. Cross–Appellee.**

Nos. 04–30084, 04–30100.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 2005.

Decided Oct. 6, 2005.

Thomas O. Rice, Esq., St.Clair Frederick Winiker, III, Esq., USSP—Office of the U.S. Attorney, Spokane, WA, for Plaintiff–Appellee.

Richard D. Wall, Esq., Attorney at Law, Spokane, WA, for Defendant–Appellant.

Before: O'SCANNLAIN, MCKEOWN, and BEA, Circuit Judges.

MEMORANDUM *

Defendant–Appellant Rodney A. Fisher appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He argues that the district court erred in denying his motion to suppress the handgun that officers seized from a motel room in which Fisher and Jamie Boulet were staying. The government cross-appeals Fisher's sentence. It argues that the district court erred in holding that attempting to elude a pursuing police vehicle in violation of Wash. Rev.Code Ann. § 46.61.024 (West 1987) (amended 2003) is not a "violent felony" as defined by 18 U.S.C. § 924(e)(2)(B)(ii). Therefore, the government argues, the district court erred in holding that Fisher could not be sentenced as an armed career criminal pursuant to 18 U.S.C. § 924(e) ("Armed Career Criminal Act"). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b)(1). We affirm

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Fisher's conviction and, subject to potential vacatur or an *Ameline* limited remand, we also affirm his sentence. Because the parties are familiar with the factual and procedural history, we do not repeat it here except to the extent necessary for our disposition.

## I.

We review *de novo* a district court's denial of a motion to suppress evidence, but we review for clear error the facts underlying the district court's determination. *United States v. Crawford*, 372 F.3d 1048, 1053 (9th Cir.2004).

## A.

■ Absent a search warrant, exigent circumstances or consent, officers typically may enter a dwelling when executing an arrest warrant only to the extent necessary to effectuate the arrest. *United States v. Albrektsen*, 151 F.3d 951, 953–54 (9th Cir.1998). Noting that Boulet "did not deny her identity or make any attempt to resist or avoid arrest," Fisher argues that "[o]nce Ms. Boulet presented herself to the officers at the threshold of the door, they were in a position to effectuate her arrest without making entry into the room." Fisher Br. at 13. Nor, argues Fisher, were there exigent circumstances requiring entry into the motel room nor did either Boulet or Fisher consent to entry. *Id.* at 14–15; Fisher Reply Br. at 1–5. Thus, Fisher argues, "[b]y ordering Ms. Boulet to go back into the room and then following her, the officers exceeded the limited authority they possessed by virtue of the arrest warrant." Fisher Br. at 13.

To the contrary, the officers were not in a position to arrest Boulet at the threshold of her motel room. She was, by all accounts, completely naked when she opened the door to the motel room, and she said she wanted to get dressed. ER 8, 18–19, 23, 41, 60–62. Unless the officers were to arrest her and then escort her through the motel and into the parking lot all while she was completely naked, Boulet had to retreat inside her motel room to clothe herself. The officers were entitled to follow. *See Washington v. Chrisman*, 455 U.S. 1, 6–7, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982) (holding that the arresting officer had "a right to remain literally at [the defendant's roommate's] elbow" while the defendant's roommate retrieved his identification from his dormitory room after having been arrested elsewhere); *United States v. Brown*, 951 F.2d 999, 1005 (9th Cir.1991) (noting that although "[o]rdinarily, the arrest of a person outside of a residence or hotel room does not justify a warrantless search of the residence or room itself," "[t]here are exceptions to this rule ... when an officer accompanies an arrestee into a residence or room in order to allow the arrestee to obtain clothing or identification").[1] Thus, we conclude that the officers did not unlawfully cross the threshold of the motel room in effectuating Boulet's arrest.

---

1. *United States v. Whitten*, 706 F.2d 1000 (9th Cir.1983), is not to the contrary. There, the defendant was arrested in the doorway of his hotel room wearing only his underwear. *Id.* at 1015. He was immediately handcuffed and placed in a chair inside the room, after which officers conducted a warrantless search of the room. *Id.* Only after the officers found the gun for which they were looking did the defendant ask to get dressed before being taken to jail. *Id.* We held that the warrantless search was unlawful. *Id.* at 1016. Here, by contrast, the officers entered the motel room apparently not to conduct a search but to stay at Boulet's "elbow" as she dressed herself. *See Chrisman*, 455 U.S. at 6, 102 S.Ct. 812. And to the extent *Whitten* might be read to require in the circumstances here a "specific *request* or consent," 706 F.2d at 1016 (emphasis added), Boulet evinced a desire to get dressed even before she opened the door. ER 60–61.

## B.

The common-law "knock-and-announce" principle as codified in federal law provides:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant,[2] if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109.[3] "[T]his common-law 'knock and announce' principle [also] forms a part of the reasonableness inquiry under the Fourth Amendment." *Wilson v. Arkansas*, 514 U.S. 927, 929, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). Fisher makes three arguments why the officers' entry into the motel room violated the "knock-and-announce" principle, none of which we find persuasive.

### 1.

Fisher argues that after knocking on the door, the motel manager "announced only that she was present and wanted to speak to the occupant of the room" and "did not announce the presence of the officers or their purpose for being there." Fisher Br.

2. Although the statute refers to "search" warrants, "the lawfulness of an officer's entry to arrest without a warrant 'must be tested by criteria identical with those embodied in 18 U.S.C. § 3109, ... which deals with entry to execute a search warrant.'" *Wong Sun v. United States*, 371 U.S. 471, 482, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (quoting *Miller v. United States*, 357 U.S. 301, 306, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958)).

3. 18 U.S.C. § 3109 governs the conduct of federal, not state, officers. *United States v. Combs*, 394 F.3d 739, 742 n. 1 (9th Cir.2005) (citing *United States v. Valenzuela*, 596 F.2d 824, 829–30 (9th Cir.1979)), *amended by* 412 F.3d 1020 (9th Cir.2005). Because the parties assume that 18 U.S.C. § 3109 is applicable and because the record does not evince that federal officers were not involved, we

at 16. However, even if the manager sought to trick Boulet into opening the door by hiding the presence of the officers, the use of a ruse or trickery to gain consensual entry does not violate the "knock-and-announce" principle either as codified in 18 U.S.C. § 3109 or as incorporated into the Fourth Amendment. *United States v. Contreras–Ceballos*, 999 F.2d 432, 435 (9th Cir.1993) (holding that a "law enforcement officer[s'] use of a ruse to gain admittance does not implicate section 3109"); *see United States v. Michaud*, 268 F.3d 728, 733 (9th Cir.2001) (holding that the officers' "use of trickery to encourage [the defendant] to open her hotel room door" did not violate the Fourth Amendment given the existence of a valid warrant).[4] And once the door was open, the officers announced their authority and purpose. ER 8.

### 2.

Fisher argues that "Boulet was more likely than not trying to prevent the door from being opened as she testified, rather than assisting in opening the door." Fisher Br. at 16. But the district court found to the contrary:

assume that they were. In any event, even if 18 U.S.C. § 3109 is not applicable, as explained below, the common-law "knock-and-announce" principle as codified therein is still relevant to the Fourth Amendment analysis. *See id.*

4. In a separate but related argument, Fisher argues that "[t]here can be no doubt" that the motel manager "was acting at the behest of the police, even though she may have had her own motives as well." Fisher Reply Br. at 6. But the district court emphatically found that the motel manager had not acted as the officers' agent. ER 83–84. Nothing about this finding is clearly erroneous. And even if the motel manager had acted at the behest of the police, as explained above, the use of a ruse or trickery does not make the consequent search impermissible.

Either it happened exactly like the police said it did, the manager was with them, but didn't—there was a knock and *the door opened,* or it happened as the manager said; she stuck a key in, Boule[t] heard what she heard, thought the door might be opening, jumped up behind the door in an instinctive reaction and *opened the door.*

ER 88 (emphases added); *see also* ER 8, 18, 23, 30–31. Given the testimony at the suppression hearing, the district court's findings are not clearly erroneous.

### 3.

Fisher argues that "the opening of the door, by whatever means, cannot be deemed a voluntary act on the part of Ms. Boulet" because the motel manager used the master key and kept the door open with her foot. Fisher Reply Br. at 6–7; *see also* Fisher Br. at 16. However, as noted above, the district court found that Boulet opened the door; once the door was open, the use of force to keep it open did not violate 18 U.S.C. § 3109. *Contreras–Ceballos,* 999 F.2d at 435 (holding that "law enforcement officer[s'] use of a ruse to gain admittance does not implicate section 3109" nor does "[t]heir use of force to keep the door open, and to enter"). Nor, then, does using force to keep a door open violate the "knock-and-announce" principle as incorporated into the Fourth Amendment. *Cf. United States v. Ramirez,* 523 U.S. 65, 73, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998) ("If § 3109 codifies the common law in this area, and the common law in turn informs the Fourth Amendment, our decisions [interpreting the Fourth Amendment] serve as guideposts in construing the statute."). Thus, in gaining entry to the motel room, the officers did not violate the "knock-and-announce" principle either as codified in 18 U.S.C. § 3109 or as incorporated into the Fourth Amendment.

### II.

We review *de novo* a district court's determination whether a crime for which a defendant previously was convicted is a "violent felony" as defined by 18 U.S.C. § 924(e)(2)(B). *United States v. Franklin,* 235 F.3d 1165, 1169 (9th Cir.2000) (citing *United States v. Bonat,* 106 F.3d 1472, 1474 (9th Cir.1997)).

### A.

■ To determine whether a crime for which a defendant previously was convicted is a "violent felony," we apply in the first instance the "categorical approach." *Taylor v. United States,* 495 U.S. 575, 600–02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The government argues that attempting to elude a pursuing police vehicle in violation of Wash. Rev.Code Ann. § 46.61.024 (West 1987) is a "violent felony" only insofar as it falls within the catch-all provision because it "involves conduct that presents a serious potential risk of physical injury to another[.]" 18 U.S.C. § 924(e)(2)(B)(ii). However, we recently concluded that attempting to elude a pursuing police vehicle in violation of this precise statute does not necessarily "involve[ ] conduct that presents a serious potential risk of physical injury to another" and, thus, is not a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(a)(2) under the categorical approach. *United States v. Kelly,* 422 F.3d 889 (9th Cir.2005). As is relevant here—that is, with respect to the catch-all provision—the definition of a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(a)(2) is identical to the definition of a "violent felony" within the meaning of 18 U.S.C. § 924(e)(2)(B)(ii). Thus, insofar as the catch-all provision is concerned, we must likewise conclude that attempting to elude a pursuing police vehicle in violation of Wash. Rev.Code Ann. § 46.61.024 (West 1987) is not a "violent felony" within the

meaning of 18 U.S.C. § 924(e)(2)(B)(ii) under the categorical approach. *See United States v. Wood*, 52 F.3d 272, 275 n. 2 (9th Cir.1995) ("[A]nalysis of the 'scope and application of the 'crime of violence' provision of section 924(e)(2)(B) is directly applicable to the determination of whether' a crime is a crime of violence under § 4B1.2" and, "[t]hus, cases construing § 924(e) can properly be used to aid in the analysis of § 4B1.2") (quoting *United States v. Lonczak*, 993 F.2d 180, 182 (9th Cir.1993)); *United States v. Garcia–Cruz*, 978 F.2d 537, 542–43 (9th Cir.1992) (holding that our reasoning in concluding that a particular crime was not a "crime of violence" under U.S.S.G. § 4B1.2 "is not changed by the fact that we are now applying the Armed Career Criminal Act" and holding that the crime was not a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii)).

### B.

■ Our conclusion above does not, however, end our analysis. Rather, in a "narrow range of cases," we may if necessary apply the "modified categorical approach." *See Taylor*, 495 U.S. at 602, 110 S.Ct. 2143.[5] The government bears the burden of introducing evidence sufficient to satisfy the modified categorical approach. *United States v. Pallares–Galan*, 359 F.3d 1088, 1099 (9th Cir.2004) (citing *Franklin*, 235 F.3d at 1172). Here, to the extent the government advances an analysis at all under the modified categorical approach, it relies upon the information charging Fisher with attempting to elude a pursuing police vehicle in violation of Wash. Rev.Code Ann. § 46.61.024 (West

1987), upon Fisher's written plea agreement resulting in the prior conviction, and upon the description of the conduct underlying his prior conviction provided in the Presentence Investigation Report ("PSR" or "presentence report") prepared for the current case.

Neither the information nor the written plea agreement evinces that Fisher, in pleading guilty, necessarily admitted that his attempt to elude a pursuing police vehicle in violation of Wash. Rev.Code Ann. § 46.61.024 (West 1987) "involve[d] conduct that presents a serious potential risk of physical injury to another[.]" 18 U.S.C. § 924(e)(2)(B)(ii). As for the PSR, in applying the modified categorical approach, a sentencing court may not rely upon a PSR's recitation of the underlying facts of the crime resulting in the prior conviction—even if uncontested—at least where the "information contained [with]in [the] presentence report [does not itself] come from an identified, acceptable source [that] can constitute evidence under [the] modified categorical approach." *United States v. Corona–Sanchez*, 291 F.3d 1201, 1212–13 (9th Cir.2002) (en banc); *accord Kelly*, 422 F.3d 889, ——. Here, the PSR identifies the source of its information as "the statement of the investigating officer," which is not an "acceptable source." *See Shepard*, 125 S.Ct. at 1257, 1259–60, 1263 (specifically excluding police reports and complaint applications from the documents on which a sentencing court may rely in applying the modified categorical approach to a prior conviction to which the defendant pleaded guilty); *Kelly*, 422 F.3d at

---

5. Because it does not affect our disposition, we assume without deciding that this appeal falls within that "narrow range of cases." *Compare United States v. Fish*, 368 F.3d 1200, 1204 (9th Cir.2004) (stating that "our prior case law is skeptical as to whether we may deviate from the categorical approach to the modified categorical approach in cases involving the 'catchall' clause") *with Shepard v. United States*, —— U.S. ——, —— –—— & n. 2, 125 S.Ct. 1254, 1258–59 & n. 2, 161 L.Ed.2d 205 (2005) (stating that although *Taylor* involved prior burglaries, the holding in *Taylor* that the modified categorical approach may sometimes be used "covered other predicate ACCA offenses").

896 ("[N]either a police report nor a PSR based on a police report meets the 'rigorous standard' of documentation required by the modified categorical approach."). Accordingly, even under the modified categorical approach, we may not deem Fisher's prior conviction to be for a "violent felony."

## C.

Having so concluded, we normally would affirm Fisher's sentence. However, in light of the Supreme Court's decision in *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), either party may seek vacatur of the sentence or, failing that, an *Ameline* limited remand. *United States v. Moreno–Hernandez,* 419 F.3d 906, 915–16 (9th Cir. 2005) (applying the plain-error analysis as articulated in *United States v. Ameline,* 409 F.3d 1073 (9th Cir.2005) (en banc), to non-Sixth Amendment *Booker* error). If either party chooses to do so, it must, within 15 days from the date this memorandum disposition is filed, so move and cite to the portions of the record, if any, in which the district court may have indicated "whether the sentence imposed would have been materially different had [it] known that the sentencing guidelines were advisory." *See Ameline,* 409 F.3d at 1074. If either party so moves, the other may file a response within 8 days after service of the motion. *See* Fed. R.App. P. 27(a)(3).

Fisher's conviction is AFFIRMED (No. 04–30084); his sentence is AFFIRMED subject to potential vacatur or an *Ameline* limited remand (No. 04–30100), and issuance of the mandate is therefore STAYED pending further order of the Court.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.