Opinion by Judge GRABER; Dissent by Judge BEA.
OPINION
GRABER, Circuit Judge:
Petitioner Ruben Adolfo Cerón seeks review of the Board of Immigration Appeals’ (“BIA”) decision that his conviction for assault with a deadly weapon, in violation of California Penal Code section 245(a)(1), is a removable offense under 8 U.S.C. § 1227(a)(2)(A)(i) because it is (I) “a crime involving moral turpitude” (II) “for which a sentence of one year or longer may be imposed.” Reviewing de novo whether Petitioner’s conviction meets those requirements, Blanco v. Mukasey, 518 F.3d 714, 718 (9th Cir.2008); Garcia-Lopez v. Ashcroft, 334 F.3d 840, 843 (9th Cir.2003), we grant the petition and remand for further proceedings.
FACTUAL AND PROCEDURAL HISTORY
Petitioner is a native and citizen of El Salvador and a lawful permanent resident of the United States. In 2006, he pleaded nolo contendere in California state court to having violated California Penal Code section 245(a)(1), which proscribes “an assault upon the person of another with a deadly weapon or instrument other than a firearm.” [1] The state court suspended the imposition of a sentence and imposed, instead, 36 months of probation. As a term and condition of probation, the state court prescribed a 364-day jail term and gave Petitioner credit for the 364 days that he actually served in the county jail.
*777 The federal government issued Petitioner a notice to appear, alleging that he was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(i) because he had been convicted of a crime involving moral turpitude for which a sentence of one year or longer could have been imposed. The immigration judge sustained the charge of removability and ordered Petitioner removed.
The BIA issued its own decision and dismissed Petitioner’s appeal. The BIA first held that, whether Petitioner’s conviction was for a misdemeanor or for a felony, the state statute permits a sentence of imprisonment of at least one year. The BIA next held that a conviction for an assault with a deadly weapon under California Penal Code section 245(a)(1) categorically constitutes a crime involving moral turpitude.
Petitioner timely petitioned for review. A three judge panel denied the petition. Ceron v. Holder, 712 F.3d 426 (9th Cir.2013). We then granted rehearing en banc. 730 F.3d 1133 (9th Cir.2013).
DISCUSSION
Title 8 U.S.C. § 1227(a)(2)(A)(i), titled “Crimes of moral turpitude,” provides:
Any alien who—
(I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and
(II) is convicted of a crime for which a sentence of one year or longer may be imposed,
is deportable.
Petitioner argues that his conviction met neither statutory requirement. We first address whether his conviction was for “a crime for which a sentence of one year or longer may be imposed.” Id. § 1227(a)(2)(A)(i)(II). We then address whether California Penal Code section 245(a)(1) categorically defines “a crime involving moral turpitude.” Id. § 1227(a)(2)(A)(i)(I).
A. “Sentence of One Year or Longer ”
, California Penal Code section 245(a)(1) directs that Petitioner “shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year.” Consulting the statutory text, the state court could have imposed a sentence of up to four years in state prison, which plainly is “a sentence of one year or longer.” 8 U.S.C. § 1227(a)(2)(A)(i)(II). In California, however, the analysis is not quite that simple.
Statutes such as section 245(a)(1) are known in California as “wobblers” because the state court can treat a conviction under section 245(a)(1) either as a felony or as a misdemeanor. See, e.g., Ewing v. California, 538 U.S. 11, 16-17, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (describing “wob-blers”). If the conviction is a felony, then the “state prison” provision applies and the maximum penalty is four years in state prison. Ceron, 712 F.3d at 430; Cal.Penal Code § 17(a). But if the conviction is a misdemeanor, then the “county jail” provision applies and the maximum penalty is one year in county jail. Ceron, 712 F.3d at 430; CaLPenal Code § 17(a).
For our purposes, it does not matter whether Petitioner’s conviction was a felony or a misdemeanor. If it was a felony, then the maximum penalty was imprisonment for four years in the state prison. If -it was a misdemeanor, then the maximum penalty was incarceration for one year in the county jail. In either event — four years or one year — the state court could have imposed “a sentence of one year or longer.” 8 U.S.C. *778 § 1227(a)(2)(A)(i)(II). Petitioner’s conviction meets the federal statutory requirement either way. In summary, the BIA correctly held that Petitioner’s conviction was for “a crime for which a sentence of one year or longer may be imposed.” Id.
In reaching that conclusion, we overrule two of our earlier cases, which misstated California law. In Garcia-Lopez, 334 F.3d at 846, we wrote: “Because the offense of which he was convicted was a misdemean- or, Garcia-Lopez’s maximum possible penalty under California law was less than six months. See CaLPenal Code § 19 (West 1992).” Similarly, in Ferreira v. Ashcroft, 382 F.3d 1045, 1051 (9th Cir.2004), we held that, “[u]nder California law, the maximum penalty for a misdemeanor is six months’ imprisonment.” (Citing Garcia-Lopez, 334 F.3d at 846.)
Those decisions misunderstood how the state law operates. California Penal Code section 19 specifies a general statutory maximum penalty of six months’ imprisonment in the county jail for all misdemeanors, “[ejxcept in cases where a different punishment is prescribed by any law of this state.” (Emphasis added.) That is, whenever the criminal statute in question prescribes a different maximum penalty, the six-month default maximum simply does not apply. For example, as described above, section 245(a)(1) specifies a maximum imprisonment for misdemean- or convictions of one year in the county jail. Therefore, the default statutory maximum of six months, prescribed by section 19, is inapplicable. Although the criminal statutes at issue in Garcia-Lopez and Ferreira also prescribed different maximum terms for misdemeanor convictions, we erroneously held that section 19’s default six-month maximum applied. See Ceron, 712 F.3d at 430-32 (describing this issue in detail). Accordingly, we overrule that aspect of those eases.
B. “Crime Involving Moral Turpitude ”
We next analyze whether California Penal Code section 245(a)(1) categorically' defines “a crime involving moral turpitude.” 8 U.S.C. § 1227(a)(2)(A)(i)(I). “The determination whether a conviction under a criminal statute is categorically a crime of moral turpitude involves two steps.... ” Castrijon-Garcia v. Holder, 704 F.3d 1205, 1208 (9th Cir.2013) (internal quotation marks and brackets omitted). “The first step is to identify the elements of the statute of conviction.” Id. Because the BIA lacks expertise in identifying the elements of state statutes, we review the first step de novo. Id. “The second step is to compare the elements of the statute of conviction to the generic definition of a crime of moral turpitude and decide whether the conviction meets that definition.” Id. Because the BIA has expertise in that task, we defer to its conclusion if warranted, following the Chevron framework if the decision is published or directly controlled by a published decision, and otherwise following the Skidmore framework. Id.
Accordingly, we begin by discussing the elements of California Penal Code section 245(a)(1). We then discuss whether we must defer to the BIA’s decision in this case that section 245(a)(1) categorically constitutes a crime involving moral turpitude.
1. Elements of California Penal Code section 2í5(a)(l)
California Penal Code section 245(a)(1) prohibits “an assault upon the person of another with a deadly weapon or instrument other than a firearm.” A “deadly weapon or instrument” is “one that is used in such a manner as to be capable of producing death or great bodily *779 injury.” People v. Aguilar, 16 Cal.4th 1023, 68 Cal.Rptr.2d 655, 945 P.2d 1204, 1210 (1997) (emphasis omitted). The weapon “must be an object extrinsic to the human body. Bare hands or feet, therefore, cannot be deadly weapons.... ” Id. An assault does not require actual harm or even physical contact. See id., 68 Cal.Rptr.2d 655, 945 P.2d at 1207 (“One may commit an assault without making actual physical contact with. the person of the victim; .,. whether the victim in fact suffers any harm is immaterial.”).
Assault is “a general intent crime.” People v. Williams, 26 Cal.4th 779, 111 Cal.Rptr.2d 114, 29 P.3d 197, 203 (2001). An assault “requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another.” Id., 111 Cal.Rptr.2d 114, 29 P.3d at, 204. “[A] defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. He may not be convicted based on facts he did not know but should have known. He, however, need not be subjectively aware of the risk that a battery might occur.” Id., 111 Cal.Rptr.2d 114, 29 P.3d at 203. “For example, a defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally and probably result in a battery.” Id., 111 Cal.Rptr.2d 114, 29 P.3d at 203 n. 3. An “assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur.” Id., 111 Cal.Rptr.2d 114, 29 P.3d at 204.
The Supreme Court of California intended its 2001 decision in Williams to “clarify the mental state for assault.” Id., 111 Cal.Rptr.2d 114, 29 P.3d at 202. The court discussed the “confusion” that had existed during the preceding decades regarding the precise mental state required for assault. Id. The Williams court’s nuanced definition — quoted above — resulted from a synthesis of numerous earlier cases, many of which conflicted on the issue of the mental state required to convict a defendant of assault. See id., 111 Cal.Rptr.2d 114, 29 P.3d at 200-03 (discussing the jurisprudential history at length). One clear example is that, as late as 1968, the California Court of Appeal had held — erroneously under the Williams formulation— that “it is now settled that assault is a specific intent crime.” People v. Fanning, 265 Cal.App.2d 729, 71 Cal.Rptr. 641, 644 (1968); cf. Williams, 111 Cal.Rptr.2d 114, 29 P.3d at 203 (“Assault is still a general intent crime.... ” (citations omitted)); see also Williams, 111 Cal.Rptr.2d 114, 29 P.3d at 200-03 (discussing confusion in the cases); People v. Hood, 1 Cal.3d 444, 82 Cal.Rptr. 618, 462 P.2d 370, 374-78 (1969) (discussing the confusion in pre-1969 cases). In sum, until recently, the requisite mental state for assault in California was ill defined. With both the Williams definition and that history in mind, we turn to the second step in the analysis: whether California Penal Code section 245(a)(1) categorically involves moral turpitude.
2. Categorical Analysis
“Although the immigration statutes do not specifically define offenses constituting crimes involving moral turpitude, a crime involving moral turpitude is generally a crime that (1) is vile, base, or depraved and (2) violates accepted moral standards.” Latter-Singh v. Holder, 668 F.3d 1156, 1161 (9th Cir.2012) (internal *780 quotation marks omitted). In this case, the BIA held:
It has long been settled in the Ninth Circuit that the offense of assault with a deadly weapon in violation of Cal.Penal Code § 245(a)(1) is a crime involving moral turpitude. Gonzales v. Barber, 207 F.2d 398, 400 (9th Cir.1953), aff'd on other grounds, 347 U.S. 637 [74 S.Ct. 822, 98 L.Ed. 1009] (1954). This Board, from its earliest days, has held likewise. Matter of G-R-, 2 I. & N. Dec. 733 (BIA 1946, A.G.1947).
Under then-existing law, the BIA’s analysis was sound. We held in Barber in 1953 that a conviction under California Penal Code section 245 — which then encompassed a range of aggravated assaults, including assault with a deadly weapon and assault with a firearm — “per se” involves moral turpitude. Barber, 207 F.2d at 400; see Cal.Penal Code § 245 (Deering supp, 1933). Similarly, the BIA held in In re G- R-in 1946 that the alien’s conviction under section 245 involved moral turpitude. 2 I. & N. Dec. at 740. The development of both federal law and state law over the intervening six decades, however, has undermined the reasoning of those cases.
In federal law, the Supreme Court announced in 1990 — decades after Barber and In re G-R-were decided — the now-commonplace “categorical approach” to determining whether a conviction meets a federal definition. Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); see also Nunez v. Holder, 594 F.3d 1124, 1129 (9th Cir.2010) (“To determine if a crime involves moral turpitude, we first apply the categorical approach.”). Relevant here, “we do not look to the facts of the underlying conviction, but rather to the state statute defining the conviction.” United States v. Laurico-Yeno, 590 F.3d 818, 821 (9th Cir.2010). “In order for a violation of the state statute to qualify [under the federal definition], the full range of conduct covered by the state statute must fall within the scope of the federal statutory provision.” Id. (internal quotation marks and brackets omitted). The label or title that a state assigns to a crime is insufficient, Taylor, 495 U.S. at 590-92, 110 S.Ct. 2143; the fact that other state statutes with the same title qualify under the relevant federal definition does not resolve whether the state statute at hand qualifies under the federal definition, see, e.g., United States v. Kelly, 422 F.3d 889, 894-95 (9th Cir.2005) (holding that, even though eluding statutes in three other states categorically met the federal definition of a crime of violence, the Washington statute did not categorically meet the federal definition).
The reasoning in In re G-R- and Barber runs counter to today’s categorical analysis. In In re G-- R-, the BIA examined the underlying facts of the alien’s conviction — now prohibited by the categorical approach — to decide that it involved moral turpitude. 2 I. & N. Dec. at 740. In its decision, the BIA discussed a case involving different facts in which a state court had ruled that a section 245 conviction “did not involve moral turpitude.” Id. The state court’s conclusion did not affect the BIA’s own conclusion because of the underlying facts of the alien’s conviction: “We find no facts in the case before us, however, ... which would warrant such a conclusion. And we cannot conclude' that [the state court’s] decision makes it necessary for us to hold that the crime of assault with a deadly weapon in California never involves moral turpitude.” Id. In today’s parlance, the BIA held that it need not determine whether section 245 categorically describes a crime involving moral turpitude, because the facts of the case before it involved moral turpitude. *781 Whatever validity that analysis had in 1946, today’s categorical approach mandates a match between the federal definition and “the full range of conduct covered by the state statute.” Laurico-Yeno, 590 F.3d at 821. In sum, In re G-R-did not hold that California Penal Code section 245 categorically constitutes a crime involving moral turpitude.
In Barber, 207 F.2d at 400, we held, in full: “In the federal law, assault with a deadly weapon is such a crime [involving moral turpitude].” We cited four cases in support of that conclusion, but each involved interpretation of an assault statute from a state other than California: United States ex rel. Zaffarano v. Corsi, 63 F.2d 757 (2d Cir.1933) (New York); United States ex rel. Mazzillo v. Day, 15 F.2d 391 (S.D.N.Y.1926) (same); United States ex rel. Ciccerelli v. Curran, 12 F.2d 394 (2d Cir.1926) (same); Weedin v. Tayokichi Yamada, 4 F.2d 455 (9th Cir.1925) (Washington). As noted above, the fact that other assault statutes qualify under the federal definition is, today, insufficient to establish that the assault statute at issue necessarily qualifies. Kelly, 422 F.3d at 894-95. In short, our reasoning in Barber, which relied entirely on other state statutes, was insufficient to support the conclusion that this particular state statute categorically involved moral turpitude.
State law developments, too, have undermined the reasoning of In re GR-and Barber. As discussed above, the California courts only recently defined with precision the requisite mental state for assault. Indeed, when In re GR-and Barber were decided, the California cases were unclear, if not contradictory, about that element of the crime. We find it implausible, at best, that the BIA in In re G- R- or we in Barber discerned the nuanced definition of the requisite mental state that the California Supreme Court announced decades later in Williams.
Of course, not every change in state law necessarily undermines our precedent or BIA precedent. But “intent [is] a crucial element in determining whether a crime involves moral turpitude.” In re Solon, 24 I. & N. Dec. 239, 242 (B.I.A.2007). The significant developments in California law over the past six decades concerning the intent element of assault have weakened significantly the reasoning of Barber and In re G- R-. Because of the foregoing changes at both the federal and state levels, we conclude that Barber is no longer good law for the proposition that California Penal Code section 245(a)(1) categorically describes a crime involving moral turpitude, and we hold that In re G- R-is unpersuasive and not worthy of deference on this point, see Castrijon-Garcia, 704 F.3d at 1208, 1210-11.
Similarly, we are not persuaded that Carr v. INS, 86 F.3d 949 (9th Cir.1996), offers a reasoned alternative. In Carr, we held that a conviction under California Penal Code section 245(a)(2) — assault with a firearm — is not a crime involving moral turpitude. Id. at 951. As an initial matter, that holding directly contradicted our binding holding in Barber. In Barber, 207 F.2d at 400, as noted, we had held expressly that California Penal Code section 245, which then encompassed a wide range of aggravated assaults including assault with a firearm, was “per se” a crime involving moral turpitude. Because Carr was a three judge panel opinion, it violated our rule that, in the absence of an intervening Supreme Court or en banc precedent that fatally undermines the case in question, a three judge panel is bound by an earlier precedential decision. United States v. Gay, 967 F.2d 322, 327 (9th Cir.1992); see generally Miller v. Gammie, 335 F.3d 889, 899-900 (9th Cir.2003) (en banc) (distilling *782 our cases concerning the precedential effect of decisions by three judge panels). There was no such intervening precedent between Barber and Carr.
Carr’s reasoning, in full, was:
[The petitioner’s conviction under California Penal Code section 245(a)(2) ] is not a crime of moral turpitude. See Komarenko v. INS, 35 F.3d 432, 435 (9th Cir.1994) (precluding an alien convicted of violating California Penal Code § 245(a)(2) — the same statute pursuant to which [the petitioner] was convicted— from seeking a discretionary deportation waiver available to those convicted of crimes of moral turpitude); Gonzalez-Alvarado v. INS, 39 F.3d 245, 246 (9th Cir.1994) (“[tjypically, crimes of moral turpitude involve fraud” as well as “acts of baseness or depravity contrary to accepted moral standards” (quotations omitted)).
Carr, 86 F.3d at 951 (last alteration in original). The second citation — to Gonzalez-Alvarado — simply recites the definition of a crime involving moral turpitude, so that citation does not provide any reasoning germane to section 245(a)(2). The first citation — to Komarenko — and its corresponding parenthetical suggest that we already had decided that section 245(a)(2) is not a crime involving moral turpitude. But Komarenko did not decide that issue. Instead, we held there that two provisions of the immigration statutes did not contain “substantially identical” lists of crimes, and we declined to consider the petitioner’s specific conviction on the ground that it was irrelevant. Komarenko, 35 F.3d at 434-35; see also id. at 435 (declining “to speculate whether the I.N.S. would have” concluded that the petitioner’s conviction was a crime involving moral turpitude). To the extent that we commented at all in Komarenko, we acknowledged that the petitioner’s conviction “could be a crime of moral turpitude.” Id. at 435 (emphasis added).
In sum, Carr failed to cite Barber — a case directly on point and contrary to its conclusion — and the only support for Carr’s holding is its citation to cases that did not reach the issue. We therefore hold that Carr is no longer good law for the proposition that California Penal Code section 245(a)(2) does not categorically define a crime involving moral turpitude.[2]
We have found no other decision — by us or by the BIA — that has analyzed whether California Penal Code section 245(a)(1) categorically defines a crime involving moral turpitude. Turning to related precedents, we find no obvious answer to that question.
“Assault may or may not involve moral turpitude.” In re Solon, 24 I. & N. Dec. at 241. Intent is “a crucial element in determining whether a crime involves moral turpitude.” Id. at 242. “ ‘[S]imple assaults’ are generally not considered to be crimes involving moral turpitude ... because they require general intent only-” Id. at 241 (citations omitted). Similarly, “not all crimes involving the injurious touching of another person *783 reflect moral depravity on the part of the offender [because some require only] de minimis conduct or harm, such as offensive or provocative physical conduct or insults.” Id. (citation omitted). “[N]either the offender’s state of mind nor the resulting level of harm, alone, is determinative of moral turpitude.” Id.
The BIA has summarized that
a finding of moral turpitude involves an assessment of both the state of mind and the level of harm required to complete the offense. Thus, intentional conduct resulting in a meaningful level of harm, which must be more than mere offensive touching, may be considered morally turpitudinous. However, as the level of conscious behavior decreases, i.e., from intentional to reckless conduct, more serious resulting harm is required in order to find that the crime involves moral turpitude. Moreover, where no conscious behavior is required, there can be no finding of moral turpitude, regardless of the resulting harm.
Id. at 242.
The “presence of an aggravating factor,” such as “serious physical injury or the use of a deadly weapon,” “can be important in determining whether a particular assault amounts to a crime involving moral turpitude.” Id. at 245; see also In re Sejas, 24 I. & N. Dec. 236, 237 (B.I.A. 2007) (“Although as a general rule, a simple assault and battery offense does not involve moral turpitude, an aggravating factor can alter our determination”). But “the need for, and the nature of, any aggravating factor is affected by the mental state required for the conviction.” In re Solon, 24 I. & N. Dec. at 245. For example, in In re Sejas, 24 I. & N. Dec. at 238, the BIA held that, although the assault statute at issue contained an aggravating factor — assault against a member of one’s family or household — the statute nevertheless was not categorically a crime involving moral turpitude because it “does not require the actual infliction of physical injury and may include any touching, however slight.”
Turning more specifically to crimes of assault with a deadly weapon, we find guidance that points in both directions, leaving us uncertain whether a conviction under California Penal Code section 245(a)(1) categorically involves moral turpitude. On the one-hand, the BIA’s statements concerning the use of a deadly weapon suggest that that factor weighs heavily in its analysis. For example, in In re O-, 3 I. & N. Dec. 193, 197 (B.I.A. 1948), the BIA long ago held that “an assault aggravated by the use of a dangerous or deadly weapon is contrary to accepted standards of morality in a civilized society.... [S]uch conduct may be looked upon as always having been inherently base.... ” See also id. at 198 (noting that “assault with a deadly weapon in general has been held to be a crime involving moral turpitude”); In re Ahortalejo-Guzman, 25 I. & N. Dec. 465, 466 (B.I.A.2011) (noting that “the use of a deadly weapon” is an “aggravating factor that indicates the perpetrator’s moral depravity” such that the general rule that simple assaults do not involve moral turpitude does not apply). Because California Penal Code section 245(a)(1) requires the intentional use of a deadly weapon or instrument, Williams, 111 Cal.Rptr.2d 114, 29 P.3d at 204, the BIA’s reasoning in In re O- and In re Ahortalejo-Guzman suggests that a conviction under the California statute necessarily involves moral turpitude.
On the other hand, it is not clear that the use of a deadly weapon is sufficient. Other factors, such as the fact that California Penal Code section 245(a)(1) requires neither physical injury nor even physical contact, Aguilar, 68 Cal.Rptr.2d 655, 945 *784 P.2d at 1207, suggest that the crime does not categorically involve moral turpitude. Additionally, the BIA has made clear that the presence of an aggravating factor is not always dispositive. See, e.g., In re Sejas, 24 I. & N. Dec. at 238 (holding that a Virginia assault statute did not categorically involve moral turpitude despite the presence of an aggravating factor).
Perhaps most importantly, “the need for, and the nature of, any aggravating factor is affected by the mental state required for the conviction.” In re Solon, 24 I. & N. Dec. at 245. California Penal Code section 245(a)(1) is a general intent crime and does not require a specific intent to injure. Williams, 111 Cal.Rptr.2d 114, 29 P.3d at 203. Nor does the statute require that the offender actually perceive the risk created by his or her actions. Id. The offender must commit an intentional act and must have knowledge of the circumstances that would lead a reasonable person to perceive the risk, but the offender’s subjective appreciation of the risk is not required. Id.
On this point, the BIA’s decision in In re Medina, 15 I. & N. Dec. 611 (B.I.A.1976), which involved an Illinois statute criminalizing assault with a deadly weapon, is instructive. The BIA concluded that, even though the statute permitted a conviction with only a “recklessness” mental staté, the statute nevertheless involved moral turpitude. Id. at 613-14. Crucial to the BIA’s analysis, however, was that the “person acting recklessly must consciously disregard a substantial and unjustifiable risk.” Id. (emphasis added); see also id. at 614 (“This definition of recklessness requires an actual awareness of the risk created by the criminal violator’s action .... [T]he violator must show a willingness to commit the act in disregard of the perceived risk.” (emphases added)). Neither In re Medina nor any other BIA decision instructs us definitively on how the BIA would assess a statute — like California Penal Code section 245(a)(1) — that requires knowledge of the relevant facts but does not require subjective appreciation of the ordinary consequences of those facts.
Given the circumstances, the prudent course of action is to remand this case to the BIA to consider the issue in the first instance. The BIA understandably followed In re G-R-and Barber— the controlling precedents at the time of its decision. By holding today that those cases are no longer good law, we have created error in the BIA’s decision and have thwarted the ordinary procedure through which the BIA has the first opportunity to assess whether a crime involves moral turpitude. Cf. Gonzales v. Thomas, 547 U.S. 183, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006) (per curiam); SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).
That first opportunity to decide is especially important because, as we have noted, we ordinarily defer to the BIA’s determination whether a state statute categorically constitutes a crime involving moral turpitude. Castrijon-Garcia, 704 F.3d at 1208. Moreover, were we to decide the issue, and were the BIA to disagree with us in a later case, we ultimately would have to decide whether the BIA’s decision warrants deference. See, e.g., Garfias-Rodriguez v. Holder, 702 F.3d 504, 513-14 (9th Cir.2012) (en banc) (concluding that, pursuant to Nat’l Cable & Telecomms. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005), our prior construction of immigration provisions did not survive a contrary reading by the BIA). In other words, eventually we will have to decide whether to defer to the BIA’s decision. If we resolved the question ourselves today, we *785 would create uncertainty while awaiting a future case that raises the same issue. Particularly in light of our own role in creating the BIA’s error, we see no persuasive justification for taking that course of action. We note, however, that a prompt decision from the BIA could help to limit the number of individuals who decide to plead guilty without proper guidance as to the immigration consequences of that decision.
Accordingly, we grant the petition and remand to the BIA to determine in the first instance whether California Penal Code section 245(a)(1) categorically constitutes a crime involving moral turpitude. We reiterate that our level of deference will depend on whether the BIA publishes its decision. See Marmolejo-Campos v. Holder, 558 F.3d 903, 909 (9th Cir.2009) (en banc) (holding that Chevron deference applies to published decisions but Slcid-more deference applies to unpublished decisions).
This en banc court retains jurisdiction over future petitions for review in this case.
Petition GRANTED and case REMANDED for further proceedings.

. At the time of Petitioner’s offense, section 245(a)(1) also prohibited an assault "by any means of force likely to produce great bodily injury.” Cal.Penal Code § 245(a)(1) (2006). Petitioner argued to the BIA that the judicially noticeable documents proved that he was not convicted of that prong, and the BIA agreed. The record and the law support that conclusion because the statute is "divisible.” Descamps v. United States, — U.S.-, 133 S.Ct. 2276, 2285, 186 L.Ed.2d 438 (2013). For simplicity, we refer in this opinion to the present-day version of section 245(a)(1), which is identical to the 2006 version except that it no longer includes the irrelevant prong.

. To the extent that other cases have cited Carr for the proposition that a conviction under section 245(a)(2) does not involve moral turpitude, those cases, too, are overruled in that limited way. See Castrijon-Garcia v. Holder, 704 F.3d 1205, 1212 (9th Cir.2013) (citing Carr for the proposition that assault with a deadly weapon is not a crime involving moral turpitude); Robles-Urrea v. Holder, 678 F.3d 702, 708 (9th Cir.2012) (same); Nicanor-Romero v. Mukasey, 523 F.3d 992, 1018 n. 6 (9th Cir.2008) (same); Navarro-Lopez v. Gonzales, 503 F.3d 1063, 1074-75 (9th Cir.2007) (en banc) (Reinhardt, J., concurring for the majority) (same). We need not, and do not, decide whether any other conclusions reached in those cases are affected by our decision today.