**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GLENN MERRILL DENSON III,

Defendant - Appellant.

No. 12-6001

W.D. Oklahoma

(D.C. No. 5:11-CR-00212-F-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant, Glenn Merrill Denson III, pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

He was subsequently declared to be an armed career criminal, and was accordingly sentenced to the statutory mandatory minimum sentence of 180 months' imprisonment, pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Denson appeals the denial of his motion to suppress evidence seized from him, as well as his sentence under the ACCA. For the following reasons, we affirm.

## BACKGROUND

On June 6, 2011, officers from the Oklahoma City Police Department were patrolling the Garden Oaks neighborhood in Oklahoma City, as part of a gang enforcement program. Six police vehicles were involved in the patrol, which contained a total of twelve police officers. Officer Chris Grimes testified that this particular neighborhood had a high concentration of Shotgun Crips gang members, and that there had been several drive-by shootings in the preceding months, which had led to the death of one Shotgun Crip member.

The officers in the police car in front of Officer Grimes stopped their car to make contact with two juveniles who were walking in the street. While providing back-up to those officers, Officer Grimes and his partner, Officer Frank Walsh, spotted Denson crossing the street at the intersection of Northeast 15th and Washington. Officer Grimes testified that, as Denson crossed the street, he reached in his waistband. The officer also testified that, once Denson had seen

the officer, he increased his speed from a walk to a jog and began heading towards a nearby house. Although the officers asked to speak to Denson, Denson continued to hurry towards the house. Officer Grimes testified that Denson seemed frantic and continued to hold his waistband as he went towards the house.

Officer Grimes met up with Denson on the front porch of the house, where Denson attempted to open the locked door of the house. As the two made contact, Denson apparently told Grimes that he "had a MAC" on him. The officer interpreted this to mean that Denson claimed to have a MAC-10 or MAC-11 firearm. The two struggled, and Denson attempted to get away, until Officers Grimes and Walsh were able to place Denson on the ground and handcuff him. When they rolled Denson over and grabbed his shirt to pick him up, the officers saw a weapon tucked into Denson's waistband. When Grimes took possession of the weapon, he noticed that the safety was off and a bullet had been loaded in the chamber. Office Grimes admitted on cross-examination at Denson's motion to suppress hearing that his police report contained nothing about Denson reaching for his waistband or running towards the house.

Denson was subsequently arrested and charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Denson filed a motion to suppress the gun found in his waistband, arguing that the search, which led to the seizure of the gun, violated the Fourth Amendment. The government responded that there was reasonable suspicion to conduct a stop pursuant to Terry

v. Ohio, 392 U.S. 1 (1968), and, when Denson stated that he had a "MAC," the officers had reasonable suspicion to believe that Denson was armed and dangerous.

The district court held an evidentiary hearing on the motion to suppress on August 4, 2011. After hearing testimony from Officer Grimes, the district court denied the motion to suppress.

Denson subsequently pled guilty, pursuant to a plea agreement, to being a felon in possession of a firearm, but he reserved the right to appeal the denial of his motion to suppress and his characterization as a career criminal for the purpose of sentencing under the ACCA. In preparation for sentencing, the United States Probation Office prepared a presentence report ("PSR"). The PSR identified three predicate "violent felonies" for purposes of the ACCA, one of which was a conviction for eluding the police. Denson objected, arguing that his Washington state conviction for "Attempting to Elude a Pursuing Police Vehicle" did not constitute a "violent felony."

The district court then held a sentencing hearing, where, after hearing arguments from both sides, the court determined that Denson's conviction for attempting to elude a pursuing police vehicle was categorically a violent felony under the ACCA. Accordingly, applying the ACCA, the district court sentenced Denson to the statutory minimum of 180 months' imprisonment. This appeal followed.

## DISCUSSION

### I. Denial of Motion to Suppress

When reviewing the denial of a motion to suppress, "we review the district court's factual findings for clear error and consider the evidence in the light most favorable to the Government." United States v. Haymond, 672 F.3d 948, 958 (10th Cir.) (further quotation omitted), cert. denied, 2012 WL 1834333 (U.S. June 18, 2012) (No. 11-10397). "[W]e review de novo the district court's ultimate determination of reasonableness under the Fourth Amendment." United States v. McGehee, 672 F.3d 860, 866 (10th Cir. 2012) (further quotation omitted).

Denson first argues that the officers violated the Fourth Amendment when they stopped him and seized his gun. As a general matter, under Terry and subsequent cases, "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 30); see also United States v. Neff, 2012 WL 1995064, at *3 (10th Cir. June 5, 2012). When we review an investigatory stop for reasonable suspicion, we must consider "the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002) (further quotation omitted).

Furthermore, "[w]hile certain facts, taken in isolation, may be quite consistent with innocent travel, these facts may, in the aggregate, add up to reasonable suspicion. Indeed, Terry itself involved a series of acts, each of them perhaps innocent if viewed separately, but which taken together warranted further investigation." Neff, 2012 WL 1995064, at *3 (further quotations and citations omitted). Finally, "[w]hen determining whether reasonable suspicion justifies a stop, 'we defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions.'" United States v. Whitley, 2012 WL 1959555, at *5 (10th Cir. June 1, 2012) (quoting United States v. McHugh, 639 F.3d 1250, 1256 (10th Cir.) (further quotation omitted), cert. denied, 132 S. Ct. 278 (2011)).

Besides conducting a Terry stop when faced with suspicious behavior, police officers may detain and search an individual when they have a reasonable suspicion that he is armed and dangerous. See United States v. Garcia, 459 F.3d 1059, 1064 (10th Cir. 2006) ("[W]e have . . . allowed 'an officer [to] conduct a pat-down search (or frisk) if he or she harbors an articulable and reasonable suspicion that the person is armed and dangerous.'" (quoting United States v. Hishaw, 235 F.3d 565, 570 (10th Cir. 2000) (further quotation omitted))).

An initial question, as the district court noted, is whether there was, in fact, a Terry stop in this case; if so, when did it occur; if it did occur, was it justified;

and, if there was no such Terry stop, was the ultimate detention and search of Denson on the porch of the residence valid on some other basis.

On the question of whether there was a valid Terry stop, both parties agree that the Supreme Court's decision in Illinois v. Wardlow, 528 U.S. 119 (2000), is instructive. In that case, an individual who was in an "area known for heavy narcotics trafficking" suddenly took off in "unprovoked flight upon noticing the police." Id. at 124. The Court held that such "nervous, evasive behavior [was] a pertinent factor in determining reasonable suspicion," and found the officers had reasonable suspicion to briefly detain the suspect for further investigation. Id.

The government argues that Wardlow mandates the same conclusion here. We compare the two scenarios. In Wardlow, the officers were patrolling an area known for heavy narcotics trafficking; here, the officers were patrolling an area known for gang activity. As in Wardlow, the suspect in this case (Denson) immediately began to move rapidly away from the officers when he noticed their presence. Although the Court described the suspect's action in Wardlow as "headlong flight," in this case, Denson at most jogged or moved away from the approaching officers at an increased pace.[1] Nonetheless, Denson's actions can be

---

[1]As the district court found, Denson "immediately started to go away. He wanted nothing to do with these [police] cars. He immediately started walking and then jogging toward [the residence]." Tr. of Mot. to Suppress at 57, R. Vol. 3 at 57.

characterized as "nervous" and "evasive," as in Wardlow Id.[2] Furthermore, as the district court found, Officer Grimes testified that Denson reached for his waistband while he was evading the police, thus also engaging in activity which can be characterized as suspicious and contributing to the totality of the circumstances facing the officers.[3]

Accordingly, arguably, in this case as in Wardlow, the officers reasonably developed a suspicion regarding Denson's activity when he, upon seeing the police approaching him, appeared to be avoiding an encounter, while acting suspicious and furtive, in a high-crime area.[4] Nonetheless, even if we conclude that the officers were justified in conducting a brief investigatory detention of

---

[2]The district court described Denson's conduct as "skittish." Tr. of Mot. to Suppress at 57, R. Vol. 3 at 57.

[3]We note that Officer Grimes apparently failed to include in his arrest report the information about Denson reaching for his waistband and/or running or jogging away from the officers. Nonetheless, the officer testified to these matters in the hearing on Denson's motion to suppress, and the district court was able to evaluate his credibility. The court specifically found the officer credible and denied Denson's motion. See United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998) ("Judging the credibility of the witnesses, determining the weight to be given to evidence, and drawing reasonable inferences and conclusions from the evidence are within the province of the district court."); see also United States v. Cooper, 654 F.3d 1104, 1123 (10th Cir. 2011).

[4]We note that Denson reminds us that the encounter in this case occurred in the early evening, an arguably less dangerous time of day, as opposed to late in the night or in the early morning. We have "held that the fact that an incident occurred late at night or early in the morning is relevant to the Terry analysis." McHugh, 639 F.3d at 1257. That is, of course, but one factor in the totality of the circumstances.

Denson, the question remains at what point they actually detained or "seized" him. "When an officer does not apply physical force to restrain a suspect, a Fourth Amendment seizure occurs only if (a) the officer shows his authority; and (b) the citizen 'submit[s] to the assertion of authority.'" United States v. Salazar, 609 F.3d 1059, 1064 (10th Cir. 2010) (quoting California v. Hodari D., 499 U.S. 621, 626 (1991)). Here, while the officers asked to speak to Denson while he was walking/jogging to the residence, Denson failed to submit to their assertion of authority until the officers actually physically encountered him on the porch. Virtually simultaneously with that, however, Denson told the officers he had a weapon, thereby giving them clear authority to seize and search him, at which point they found the gun.

In sum, whether we view the encounter between the police and Denson as a Terry stop with the actual seizure occurring on the porch, or as a consensual encounter followed by a search and subsequent arrest based upon the officers' reasonable belief (obtained when Denson told them that he had a "Mac") that Denson was armed, the search and arrest did not violate the Fourth Amendment. At a minimum, "the officers had reasonable suspicion, which ripened into probable cause to detain and search [Denson]." United States v. Charles, 576 F.3d 1060, 1065 (10th Cir. 2009). We therefore affirm the district court's denial of Denson's motion to suppress the evidence seized from him.

## II.  Sentence Under ACCA

"We review a sentence enhancement imposed under the ACCA de novo." United States v. Delossantos, 2012 WL 1948645, at *1 (10th Cir. May 30, 2012). "The government carries the burden of proving by a preponderance of the evidence that an enhancement is appropriate."  Id. (further quotation omitted).

Under the ACCA, 18 U.S.C. § 924(e)(1), a sentence enhancement applies when a person has been convicted of violating § 922(g) and has three previous convictions for a violent felony or a serious drug offense.  An offense is considered a violent felony if it is punishable by more than one year of imprisonment and

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

> Denson was convicted in 2006 of violating the following statute:
>
> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a Class C felony.  The signal given by the police officer may be by hand, voice, emergency light, or siren. . . .

Wash. Rev. Code § 46.61.024 (2003).  Prior to 2003, the first sentence provided that "[a]ny driver of a motor vehicle who fails or refuses to immediately bring his

vehicle to a stop <u>and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others</u> while attempting to elude a pursuing police vehicle, . . . ." <u>Id.</u> (2001). Denson argues the district court erred in concluding that his conviction under the amended (post-2003) statute constitutes a conviction for a violent felony under 18 U.S.C. § 924(e)(2)(B).

Our standards for evaluating whether a prior conviction is a conviction for a violent felony under the ACCA are well known.[5] "We review de novo the legal question of whether prior convictions qualify as violent felonies under the ACCA." <u>United States v. Scoville</u>, 561 F.3d 1174, 1176 (10th Cir. 2009). In doing so, "we apply a categorical approach, generally looking only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction." <u>Id.</u> (internal quotation marks omitted). "That is, we consider whether the elements of the offense are of the type that would justify its inclusion within the ACCA, without inquiring into the specific conduct of this particular offender." <u>Id.</u> (internal quotation marks omitted).

_____

[5]The ACCA sets minimum sentences for firearms offenders who have been convicted of "violent felonies." The United States Sentencing Guidelines Commission, <u>Guidelines Manual</u>, provides enhanced penalties for firearms offenders who have been convicted of "crimes of violence." The definitions of the two crimes are essentially identical. That "nearly identical language . . . allows us to consider precedent involving one in construing the other." <u>United States v. McConnell</u>, 605 F.3d 822, 828 (10th Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 3021 (2011).

-11-

We apply a modified categorical approach, however, if the "criminal statute proscribes conduct broader than that which would satisfy the ACCA's definition of a violent felony." Id. (internal quotation marks omitted). In such a situation, we "look at the charging documents and documents of conviction to determine whether the defendant in a particular case was convicted of an offense that falls within the ACCA." Id. (internal quotation marks omitted). It is not required "that every conceivable factual offense covered by a statute . . . necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." James v. United States, 550 U.S. 192, 208 (2007). "Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." Id.

The Washington statute at issue here does not have any of the elements set forth in § 924(e)(2)(B)(i), nor does it encompass any of the crimes enumerated in subsection (ii). Accordingly, it describes a violent felony under the ACCA only if it satisfies the so-called residual clause prohibiting crimes which "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). In determining whether the Washington offense of eluding a police officer is a violent felony under the residual clause, "we rely on the Supreme Court's holding that the Indiana offense of resisting law enforcement by fleeing in a vehicle is a violent felony under the ACCA's residual

clause." United States v. Thomas, 643 F.3d 802, 805 (10th Cir. 2011) (citing

Sykes v. United States, 131 S. Ct. 2267 (2011)).  The statute at issue in Sykes

provided as follows:

> (a) A person who knowingly or intentionally:
>
> . . .
>
>> (3) flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop;
>
> commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).
>
> (b) The offense under subsection (a) is a:
>
>> (1) Class D felony if:
>>
>>> (A) the offense is described in subsection (a)(3) and the person uses a vehicle to commit the offense.

Ind. Code § 35-44-3-3 (2004).  Sykes was convicted under § 35-44-3-3(b)(1)(A)

for using a vehicle to flee after the police ordered him to stop.  See Sykes, 131 S.

Ct. at 2271.

As we noted in Thomas, the Supreme Court concluded that Sykes's offense

"present[ed] a serious potential risk of physical injury to another," because

"[w]hen a perpetrator defies a law enforcement command by fleeing in a car, the

determination to elude capture makes a lack of concern for the safety of property

and persons of pedestrians and other drivers an inherent part of the offense."  Id.

at 2273; see Thomas, 643 F.3d at 806.  Furthermore, the Court observed that fleeing by vehicle creates a strong likelihood that the police will, in turn, pursue and create an even more dangerous situation, and statistical studies show that vehicular flight is actually more dangerous to the police and to bystanders than burglary or arson, two felony crimes which the ACCA specifically enumerates as violent felonies.  Sykes, 131 S. Ct. at 2273.  Finally:

> the Court stated that the Indiana offense was not excluded from the residual clause by the exception set forth in Begay v. United States, 553 U.S. 137 (2008), for "strict liability, negligence, and recklessness crime[s]" even when they present serious risks of physical injury; it explained that the Indiana statute had the "stringent *mens rea* requirement" that the defendant act "knowingly or intentionally."

Thomas, 643 F.3d at 806 (citation and further quotation marks omitted).[6]

We concluded in Thomas that Sykes controlled our decision in that case. We reach that same conclusion in this case.  As in Thomas, we find that the elements of the statute at issue in Sykes are, in relevant part, substantially identical to the elements of the Washington offense for which Denson was

---

[6]In Begay, the Supreme Court held that driving under the influence ("DUI") is not a violent felony under the residual clause of the ACCA because the crimes listed in the residual clause all involve "purposeful, violent, and aggressive conduct," which suggests a "higher degree of intent than negligent or merely accidental conduct" usually present in a DUI.  Begay, 553 U.S. at 144-45.  Sykes distinguished Begay by explaining that vehicle flight "has a stringent *mens rea* requirement and violators must act knowingly or intentionally."  Sykes, 131 S. Ct. at 2275 (internal quotations omitted).  Thus, under Begay, crimes like DUI, which are strict liability, negligence or recklessness crimes, as opposed to knowing or intentional crimes, are excepted from the ACCA residual clause and are not violent felonies.

convicted.  Sykes was convicted of using a vehicle to "flee[] from a law enforcement officer after the officer ha[d], by visible or audible means, identified himself and ordered the person to stop."  Ind. Code § 35-44-3-3.  Denson was convicted of "fail[ing] or refus[ing] to immediately bring his . . . vehicle to a stop and . . . driv[ing] his . . . vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop. . . ."  Wash. Rev. Code § 46.61.024.  Thus, as with the defendant in Thomas, Denson and Sykes "were each convicted of fleeing in a motor vehicle from a police officer who was readily identifiable as a police officer and who visibly or audibly signaled him to stop."  Thomas, 643 F.3d at 806.

Additionally, Sykes' conduct was "knowing[] or intentional[]," Ind. Code § 35-44-3-3(a), and Thomas and Denson engaged in "willful[]" conduct.  Wash. Rev. Code § 46.61.024; Kan. Stat. Ann. § 8-1568(a).  Both defendants therefore had a comparable *mens rea*.  While Denson argues that the relevant mental state is "recklessness," citing the statute's description of the accused's manner of driving, we disagree.[7]  As in Thomas and other cases, we focus on the mental state of the

_____

[7]Denson also argues that his prior conviction should not be characterized as a violent felony conviction because two Ninth Circuit decisions held that the prior version of the Washington statute (previous to its amendment in 2003) did not prohibit a violent felony.  See United States v. Jennings, 515 F.3d 980 (9th Cir. 2008); United States v. Fisher, 2005 WL 2464207 (9th Cir. Oct. 6, 2008) (unpublished).  As indicated above, Denson was convicted of the amended (post-

(continued...)

-15-

defendant in fleeing or eluding law enforcement. See Thomas, 643 F.3d at 805-06 (statute provides that a person commits a felony if he "knowingly or intentionally . . . flees. . . ."); see also, e.g., United States v. Holston, 2012 WL 1992373 (5th Cir. June 1, 2012) (unpublished) (statute prohibits "intentional[]" flight from police); United States v. Doyle, 2012 WL 1560394 (6th Cir. 2012) (statute prohibits "intentional[]" flight); United States v. Hudson, 673 F.3d 263 (4th Cir. 2012) (statute prohibits "willful[]" flight); cf., United States v. Eatman, 2012 WL 401525 (10th Cir. Feb. 9, 2012) (unpublished) (noting that while the dangers of serious risk of injury to places, property and persons are "particularly acute in cases involving vehicular flight, they are likewise inherent in resisting an arrest [without vehicular involvement").[8]

In short, the district court correctly held that Denson's 2006 conviction for eluding the police in a vehicle qualified as a violent felony. We therefore affirm

---

[7](...continued)
2003) version of the statute. For several reasons, those Ninth Circuit cases do not undermine our conclusion in this case: (1) while informative, a decision of a fellow circuit court does not control our decision; (2) those cases addressed the pre-amendment version of the relevant statute; (3) those cases pre-dated Sykes.

[8]Our cases prior to Sykes had held that statutes prohibiting vehicular flight from a police officer described violent felonies, in part because the flight was knowing, intentional or willful. See McConnell, 605 F.3d at 826-28, 830 (and citing cases from other circuits in agreement); United States v. Wise, 597 F.3d 1141, 1146 (10th Cir. 2010) (noting that statute at issue "requires deliberate action").

the district court's conclusion that Denson is an armed career criminal under the ACCA.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Denson's motion to suppress and we AFFIRM the sentence imposed.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge