## MATTER OF MEDINA

### In Deportation Proceedings

### A–11907736

*Decided by Board March 19, 1976*

A conviction for aggravated assault under section 12—2(a)(1) of Chapter 38 of the Illinois Revised Statutes is conviction of a crime involving moral turpitude.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Arrested and deported, no consent to reapply

Lodged: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, to wit: attempted burglary and aggravated assault.

ON BEHALF OF RESPONDENT:
Joseph Minsky, Esquire
Minsky, Lichtenstein & Feiertag, P.C.
39 South La Salle St., Suite 705
Chicago, Illinois 60603

ON BEHALF OF SERVICE:
Jesse M. Sellers
Appellate Trial Attorney

In a decision dated January 6, 1975, the immigration judge denied the respondent's applications for suspension of deportation and voluntary departure, and ordered the respondent deported from the United States. The respondent has appealed from the denials of discretionary relief and from the finding of deportability under section 241(a)(4) of the Immigration and Nationality Act. The appeal will be dismissed.

The respondent is a native and citizen of Mexico. The respondent has entered the United States on several occasions. All of his entries, however, have been illegal. The respondent evidently first entered the United States in 1948 in search of work. He was deported in April of 1954, but returned approximately two years later. In 1960, he voluntarily agreed to go back to Mexico, but he again entered the United States in March 1962. He has remained here ever since.

The respondent concedes that he is deportable under section 241(a)(1) as an alien who was excludable at the time of his 1962 entry for failure to obtain the required permission to reapply for admission after deportation. The respondent, however, challenges the immigration judge's fin-

ding that he is deportable under section 241(a)(4) as an alien who at any time after entry has been convicted of two crimes involving moral turpitude. It is this latter finding which, if correct, makes the respondent statutorily ineligible for either suspension of deportation under section 244(a) or voluntary departure under section 244(e) of the Act.

The respondent concedes that he has been twice convicted. In February of 1953, he was convicted of attempted burglary in Texas. The respondent acknowledges that this crime involves moral turpitude. The respondent's second conviction was in October of 1971 for aggravated assault in Illinois.

The respondent raises several challenges to the finding that he is deportable under section 241(a)(4). He initially argues that aggravated assault in Illinois is not a crime involving moral turpitude.

The respondent was convicted under Chapter 38, section 12–2(a)(1) of the Illinois Revised Statutes, which provides:

§ 12–2. Aggravated Assault

(a) A person commits an aggravated assault, when, in committing an assault, he:
(1) Uses a deadly weapon . . . .

There are numerous cases indicating that assault, or assault and battery, with a deadly weapon is a crime involving moral turpitude. See e.g. *Gonzales* v. *Barber*, 207 F.2d 398 (C.A. 9, 1953) aff'd, 347 U.S. 637 (1954); *U.S. ex rel. Morlacci* v. *Smith*, 8 F.2d 663 (W.D.N.Y. 1925); *Matter of Ptasi*, 12 I. & N. Dec. 790 (BIA 1968); *Matter of Goodalle*, 12 I. & N. Dec. 106 (BIA 1967); *Matter of G–R–*, 2 I. & N. Dec. 733 (BIA 1946; A.G. 1947). See also *Matter of Baker*, 15 I. & N. Dec. 50 (BIA 1974).

Counsel, however, argues that the presence of a criminal mental state during the commission of the crime is not required for conviction under the Illinois aggravated assault statute. Counsel basically contends that aggravated assault is an absolute liability offense in Illinois. Counsel is in error in this respect.

Various mental states which may be the basis for criminal convictions are specifically defined in Chapter 38 of the Illinois Revised Statutes: section 4–4 defines Intent; section 4–5 defines Knowledge; section 4–6 defines Recklessness; and section 4–7 defines Negligence.

Absolute liability crimes are governed by section 4–9, which provides:

§ 4–9. Absolute Liability

A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4–4 through 4–7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described. Thus, absolute liability crimes in Illinois encompass only those misdemeanors for which the punishment cannot exceed $500, unless the statute itself indicates a legislative purpose to impose absolute liability.

At the time of the respondent's conviction, *simple* assault was an absolute liability crime, because the possible punishment did not include imprisonment and any fine could not exceed $500. However, the possible punishment for *aggravated assault* in 1971 included a $1,000 fine, and imprisonment up to five years. Furthermore, the aggravated assault statute does not indicate a legislative purpose to impose absolute liability. See *Daley v. Thaxton,* 92 Ill. App. 2d 277, 236 N.E. 2d 433 (1968). Illinois thus required the presence of a criminal mental element for conviction of aggravated assault under section 12-2(a)(1).

Section 4-3 of Chapter 38 is the general statute governing the mental state requirement for Illinois criminal statutes which prescribe no particular mental state. Section 4-3 provides in part:

§ 4-3. Mental State

(a) A person is not guilty of an offense, other than an offense which involves absolute liability, unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in Sections 4-4 through 4-7.

(b) . . . *If the statute does not prescribe a particular mental state applicable to an element of an offense* (other than an offense which involves absolute liability), *any mental state defined in Sections 4-4, 4-5 or 4-6 is applicable. (Emphasis added.)*

The Illinois aggravated assault statute does not prescribe a particular mental state applicable to an element of that offense. Accordingly, any mental state defined in section 4-4 (Intent), section 4-5 (Knowledge), or section 4-6 (Recklessness) is applicable. The record of conviction relating to the respondent's 1971 aggravated assault conviction does not specify any one of these three mental elements. It is therefore possible that the respondent could have been convicted had he acted recklessly within the meaning of section 4-6.

Intent or knowledge can serve as the basis for a finding of moral turpitude in criminal conduct. However, in dealing with statutes from jurisdictions other than Illinois, we have indicated that moral turpitude for immigration purposes does not necessarily inhere in criminally reckless conduct. *Matter of Szegedi,* 10 I. & N. Dec. 28 (BIA 1962); see *Matter of Gantus-Bobadilla,* 13 I. & N. Dec. 777 at 778 (BIA 1971). We have reconsidered the general position taken in these cases, and we have concluded that moral turpitude can lie in criminally reckless conduct.

Illinois defines the term recklessness in Chapter 38, section 4-6, which provides:

§ 4-6. Recklessness

A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. An act performed recklessly is performed wantonly, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning.

The person acting recklessly must *consciously* disregard a *substantial*

*and unjustifiable* risk, and such disregard must constitute a *gross* deviation from the standard of care which a reasonable person would exercise in the situation. This definition of recklessness requires an actual awareness of the risk created by the criminal violator's action. While the Illinois recklessness statute may not require a specific intent to cause a particular harm, the violator must show a willingness to commit the act in disregard of the perceived risk. The presence or absence of a corrupt or vicious mind is not controlling. *Guerrero de Nodahl* v. *INS*, 407 F.2d 1405 (C.A. 9, 1969). We hold that the criminally reckless conduct defined by section 4–5 be the basis for a finding of moral turpitude.

We have indicated that assault with a deadly weapon is generally deemed to be a crime involving moral turpitude. Under Illinois law, the respondent had to have committed his aggravated assault with one of the three specified mental elements. Each of these mental states will support a finding of moral turpitude. Thus, a conviction for aggravated assault under section 12–2(a)(1) inherently involves moral turpitude. The respondent's 1971 aggravated assault conviction is a conviction for a crime involving moral turpitude.

Counsel argues that *Illinois* would not consider aggravated assault to involve "moral turpitude," because this crime is not considered an "infamous crime" under certain Illinois statutes relating to divorce and the impeachment of witnesses at trials. The concept of an "infamous crime" is not necessarily totally synonymous with the concept of a crime involving moral turpitude. However, of more importance is the simple fact that a particular state's determination as to what crimes it deems morally turpitudinous is not conclusive for federal immigration purposes. See *Gonzales* v. *Barber*, 207 F.2d 398 at 400 (C.A. 9, 1953), aff'd, 374 U.S. 637 (1954).

Counsel also seeks to have us look into the facts surrounding the respondent's conviction. In this regard, counsel claims that the respondent was not represented at the time of the 1971 Illinois conviction. We, however, may not go behind the record of conviction. *Matter of Gutierrez*, 14 I. & N. Dec. 457 (BIA 1973); see also *Rassano* v. *INS*, 377 F.2d 971, 974 (C.A. 7, 1966), vacated and remanded on other grounds, 377 F.2d 975.

Counsel finally challenges the respondent's deportability under section 241(a)(4), arguing that the respondent has not been convicted of two crimes involving moral turpitude *after entry*. The respondent has been convicted only once since he last entered the United States in 1962. Counsel argues that it is this last entry which governs, and therefore that the respondent's 1953 attempted burglary conviction in Texas cannot now be used in any respect as a basis for a finding of deportability.

We have rejected this contention in the past. As a general rule, the

Service may base a section 241(a)(4) charge on any entry made by an alien. The alien's last entry is not controlling for this purpose. See *Matter of M–S–*, 9 I. & N. Dec. 643 (BIA 1962); *Matter of A–*, 6 I. & N. Dec. 684 (BIA 1955). See also *Matter of S–*, 7 I. & N. Dec. 536 (BIA 1957). The respondent was not admissible to the United States in 1962, the year of his last entry, because of the existence of his attempted burglary conviction. See section 212(a)(9), Immigration and Nationality Act. It would be anomalous if that illegal entry now precluded consideration of the attempted burglary conviction. The respondent is not in the position of an alien who was clearly admissible at the time of his last entry and who entered with a valid immigrant visa. *Bonetti* v. *Rogers*, 356 U.S. 691 (1958), which dealt with a different statute and involved a peculiar fact setting relating to a past member of the Communist Party, is not applicable.

The respondent's deportability under section 241(a)(4) has been established by clear, convincing and unequivocal evidence. The respondent assumed the status constituting a ground for deportation on the date of his second conviction in 1971. Ten years have not elapsed since that date. The respondent is not eligible for suspension of deportation under section 244(e).

The decision of the immigration judge was correct.

**ORDER:** The appeal is dismissed.