**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RUBEN ADOLFO CERON, AKA Ruben Ceron-Casco, *Petitioner*, v. ERIC H. HOLDER, JR., Attorney General, *Respondent*. | No. 08-70836 Agency No. A073-969-493 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted En Banc
December 11, 2013—San Francisco, California

Filed March 31, 2014

Before: Alex Kozinski, Chief Judge, and Stephen
Reinhardt, Barry G. Silverman, Susan P. Graber, Ronald
M. Gould, Richard A. Paez, Richard R. Clifton, Carlos T.
Bea, N. Randy Smith, Mary H. Murguia, and Andrew D.
Hurwitz, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Bea

## SUMMARY[*]

### Immigration

The en banc court granted Ruben Adolfo Ceron's petition for review of the Board of Immigration Appeals' decision finding that his conviction for assault with a deadly weapon other than a firearm, in violation of California Penal Code § 245(a)(1), is a categorical crime involving moral turpitude.

The en banc court held that even though a wobbler offense, the conviction was for "a crime for which a sentence of one year or longer may be imposed" because even if it was a misdemeanor the maximum penalty was incarceration for one year. The en banc court overruled *Garcia-Lopez v. Ashcroft*, 334 F.3d 840, 843 (9th Cir. 2003) and *Ferreira v. Ashcroft*, 382 F.3d 1045, 1051 (9th Cir. 2004), to the extent that they misstated California law as to the maximum penalty for state law misdemeanor convictions.

The en banc court found that the development of federal and state law over the intervening six decades has undermined the reasoning of *Gonzales v. Barber*, 207 F.2d 398 (9th Cir. 1953), and *Matter of G-R-*, 2 I. & N. Dec. 733 (BIA 1946, A.G. 1947), which held that a conviction under CPC § 245 involved moral turpitude. The court found that the reasoning in those cases runs counter to the *Taylor v. United States*, 495 U.S. 575 (1990), categorical approach, and that significant developments in California law concerning the intent element of assault have undermined their reasoning.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The court held thus that *Barber* is no longer good law for the proposition that § 245(a)(1) categorically describes a CIMT, and that *G-R-* is unpersuasive and not worthy of deference on the point.  The court further held that *Carr v. INS*, 86 F.3d 949 (9th Cir. 1996), is no longer good law for its holding that CPC § 245(a)(2) is not a categorical CIMT.

The court remanded for the BIA to determine in the first instance whether § 245(a)(1) constitutes a categorical CIMT.

Judge Bea concurred with the majority's analysis on its holding that the conviction was for "a crime for which a sentence of one year or longer may be imposed."  Judge Bea, however, would deny the petition for review, and dissented from the majority's application of the *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, (9th Cir. 2007), framework analyzing whether a crime falls into the category of crimes involving moral turpitude.  Judge Bea wrote that a CIMT has no elements, and he would rather look to the weight of federal and state court authority pursuant to *Jordan v. De George*, 341 U.S. 223 (1951), to find that assault with a deadly weapon is a CIMT.

## COUNSEL

Mario Acosta, Jr. (argued), Law Office of Mario Acosta, Jr., PLC, Los Angeles, California; and Elsa I. Martinez, Law Office of Elsa Martinez, PLC, Los Angeles, California, for Petitioner.

Bryan S. Beier (argued), Carol Federighi, and Cindy S. Ferrier, Senior Litigation Counsel, Stuart F. Delery, Assistant Attorney General, Tony West, Assistant Attorney General,

and Joseph O'Connell, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

Vincent J. Brunkow and Kara Hartzler, Federal Defenders of San Diego, Inc., San Diego, California; Charles Roth, National Immigrant Justice Center, Chicago, Illinois, and Matt Adams, Northwest Immigrant Rights Project, Seattle, Washington; and Thomas E. Gorman, Keker & Van Nest LLP, San Francisco, California, for Amici Curiae.

## OPINION

GRABER, Circuit Judge:

Petitioner Ruben Adolfo Ceron seeks review of the Board of Immigration Appeals' ("BIA") decision that his conviction for assault with a deadly weapon, in violation of California Penal Code section 245(a)(1), is a removable offense under 8 U.S.C. § 1227(a)(2)(A)(i) because it is (I) "a crime involving moral turpitude" (II) "for which a sentence of one year or longer may be imposed." Reviewing de novo whether Petitioner's conviction meets those requirements, *Blanco v. Mukasey*, 518 F.3d 714, 718 (9th Cir. 2008); *Garcia-Lopez v. Ashcroft*, 334 F.3d 840, 843 (9th Cir. 2003), we grant the petition and remand for further proceedings.

### FACTUAL AND PROCEDURAL HISTORY

Petitioner is a native and citizen of El Salvador and a lawful permanent resident of the United States. In 2006, he pleaded nolo contendere in California state court to having violated California Penal Code section 245(a)(1), which

proscribes "an assault upon the person of another with a deadly weapon or instrument other than a firearm."[1]  The state court suspended the imposition of a sentence and imposed, instead, 36 months of probation.  As a term and condition of probation, the state court prescribed a 364-day jail term and gave Petitioner credit for the 364 days that he actually served in the county jail.

The federal government issued Petitioner a notice to appear, alleging that he was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(i) because he had been convicted of a crime involving moral turpitude for which a sentence of one year or longer could have been imposed.  The immigration judge sustained the charge of removability and ordered Petitioner removed.

The BIA issued its own decision and dismissed Petitioner's appeal.  The BIA first held that, whether Petitioner's conviction was for a misdemeanor or for a felony, the state statute permits a sentence of imprisonment of at least one year.  The BIA next held that a conviction for an assault with a deadly weapon under California Penal Code section 245(a)(1) categorically constitutes a crime involving moral turpitude.

---

[1] At the time of Petitioner's offense, section 245(a)(1) also prohibited an assault "by any means of force likely to produce great bodily injury."  Cal. Penal Code § 245(a)(1) (2006).  Petitioner argued to the BIA that the judicially noticeable documents proved that he was *not* convicted of that prong, and the BIA agreed.  The record and the law support that conclusion because the statute is "divisible."  *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013).  For simplicity, we refer in this opinion to the present-day version of section 245(a)(1), which is identical to the 2006 version except that it no longer includes the irrelevant prong.

Petitioner timely petitioned for review. A three-judge panel denied the petition. *Ceron v. Holder*, 712 F.3d 426 (9th Cir. 2013). We then granted rehearing en banc. 730 F.3d 1133 (9th Cir. 2013).

## DISCUSSION

Title 8 U.S.C. § 1227(a)(2)(A)(i), titled "Crimes of moral turpitude," provides:

> Any alien who—
>
> (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and
>
> (II) is convicted of a crime for which a sentence of one year or longer may be imposed,
>
> is deportable.

Petitioner argues that his conviction met neither statutory requirement. We first address whether his conviction was for "a crime for which a sentence of one year or longer may be imposed." *Id.* § 1227(a)(2)(A)(i)(II). We then address whether California Penal Code section 245(a)(1) categorically defines "a crime involving moral turpitude." *Id.* § 1227(a)(2)(A)(i)(I).

A. *"Sentence of One Year or Longer"*

California Penal Code section 245(a)(1) directs that Petitioner "shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year." Consulting the statutory text, the state court could have imposed a sentence of up to four years in state prison, which plainly is "a sentence of one year or longer." 8 U.S.C. § 1227(a)(2)(A)(i)(II). In California, however, the analysis is not quite that simple.

Statutes such as section 245(a)(1) are known in California as "wobblers" because the state court can treat a conviction under section 245(a)(1) either as a felony or as a misdemeanor. *See, e.g.*, *Ewing v. California*, 538 U.S. 11, 16–17 (2003) (describing "wobblers"). If the conviction is a felony, then the "state prison" provision applies and the maximum penalty is four years in state prison. *Ceron*, 712 F.3d at 430; Cal. Penal Code § 17(a). But if the conviction is a misdemeanor, then the "county jail" provision applies and the maximum penalty is one year in county jail. *Ceron*, 712 F.3d at 430; Cal. Penal Code § 17(a).

For our purposes, it does not matter whether Petitioner's conviction was a felony or a misdemeanor. If it was a felony, then the maximum penalty was imprisonment for four years in the state prison. If it was a misdemeanor, then the maximum penalty was incarceration for one year in the county jail. In either event—four years or one year—the state court could have imposed "a sentence of one year or longer." 8 U.S.C. § 1227(a)(2)(A)(i)(II). Petitioner's conviction meets the federal statutory requirement either way. In summary, the BIA correctly held that Petitioner's conviction was for "a

crime for which a sentence of one year or longer may be imposed." *Id.*

In reaching that conclusion, we overrule two of our earlier cases, which misstated California law. In *Garcia-Lopez*, 334 F.3d at 846, we wrote: "Because the offense of which he was convicted was a misdemeanor, Garcia-Lopez's maximum possible penalty under California law was less than six months. *See* Cal. Penal Code § 19 (West 1992)." Similarly, in *Ferreira v. Ashcroft*, 382 F.3d 1045, 1051 (9th Cir. 2004), we held that, "[u]nder California law, the maximum penalty for a misdemeanor is six months' imprisonment." (Citing *Garcia-Lopez*, 334 F.3d at 846.)

Those decisions misunderstood how the state law operates. California Penal Code section 19 specifies a general statutory maximum penalty of six months' imprisonment in the county jail for all misdemeanors, "*[e]xcept* in cases where a different punishment is prescribed by any law of this state." (Emphasis added.) That is, whenever the criminal statute in question prescribes a *different* maximum penalty, the six-month default maximum simply does not apply. For example, as described above, section 245(a)(1) specifies a maximum imprisonment for misdemeanor convictions of one year in the county jail. Therefore, the default statutory maximum of six months, prescribed by section 19, is inapplicable. Although the criminal statutes at issue in *Garcia-Lopez* and *Ferreira* also prescribed different maximum terms for misdemeanor convictions, we erroneously held that section 19's default six-month maximum applied. *See Ceron*, 712 F.3d at 430–32 (describing this issue in detail). Accordingly, we overrule that aspect of those cases.

B.  *"Crime Involving Moral Turpitude"*

We next analyze whether California Penal Code section 245(a)(1) categorically defines "a crime involving moral turpitude."    8  U.S.C.  §  1227(a)(2)(A)(i)(I).    "The determination whether a conviction under a criminal statute is categorically a crime of moral turpitude involves two steps . . . ." *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1208 (9th Cir. 2013) (internal quotation marks and brackets omitted). "The first step is to identify the elements of the statute of conviction."  *Id.*  Because the BIA lacks expertise in identifying the elements of state statutes, we review the first step de novo.  *Id.*  "The second step is to compare the elements of the statute of conviction to the generic definition of a crime of moral turpitude and decide whether the conviction meets that definition."  *Id.*  Because the BIA has expertise in that task, we defer to its conclusion if warranted, following the *Chevron* framework if the decision is published or directly controlled by a published decision, and otherwise following the *Skidmore* framework.  *Id.*

Accordingly, we begin by discussing the elements of California Penal Code section 245(a)(1).  We then discuss whether we must defer to the BIA's decision in this case that section 245(a)(1) categorically constitutes a crime involving moral turpitude.

### 1. *Elements of California Penal Code section 245(a)(1)*

California Penal Code section 245(a)(1) prohibits "an assault upon the person of another with a deadly weapon or instrument other than a firearm."  A "deadly weapon or instrument" is "one that is used in such a manner as to be

capable of producing death or great bodily injury." *People v. Aguilar*, 945 P.2d 1204, 1210 (Cal. 1997) (emphasis omitted). The weapon "must be an object extrinsic to the human body. Bare hands or feet, therefore, cannot be deadly weapons . . . ." *Id.* An assault does not require actual harm or even physical contact. *See id.* at 1207 ("One may commit an assault without making actual physical contact with the person of the victim; . . . whether the victim in fact suffers any harm is immaterial.").

Assault is "a general intent crime." *People v. Williams*, 29 P.3d 197, 203 (Cal. 2001). An assault "requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." *Id.* at 204. "[A] defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. He may not be convicted based on facts he did not know but should have known. He, however, need not be subjectively aware of the risk that a battery might occur." *Id.* at 203. "For example, a defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally and probably result in a battery." *Id.* at 203 n.3. An "assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur." *Id.* at 204.

The Supreme Court of California intended its 2001 decision in *Williams* to "clarify the mental state for assault." *Id.* at 202. The court discussed the "confusion" that had existed during the preceding decades regarding the precise

mental state required for assault. *Id.* The *Williams* court's nuanced definition—quoted above—resulted from a synthesis of numerous earlier cases, many of which conflicted on the issue of the mental state required to convict a defendant of assault. *See id.* at 200–03 (discussing the jurisprudential history at length). One clear example is that, as late as 1968, the California Court of Appeal had held—erroneously under the *Williams* formulation—that "it is now settled that assault is a specific intent crime." *People v. Fanning*, 71 Cal. Rptr. 641, 644 (Ct. App. 1968); *cf. Williams*, 29 P.3d at 203 ("Assault is still a general intent crime . . . ." (citations omitted)); *see also Williams*, 29 P.3d at 200–03 (discussing confusion in the cases); *People v. Hood*, 462 P.2d 370, 374–78 (Cal. 1969) (discussing the confusion in pre-1969 cases). In sum, until recently, the requisite mental state for assault in California was ill defined. With both the *Williams* definition and that history in mind, we turn to the second step in the analysis: whether California Penal Code section 245(a)(1) categorically involves moral turpitude.

## 2. *Categorical Analysis*

"Although the immigration statutes do not specifically define offenses constituting crimes involving moral turpitude, a crime involving moral turpitude is generally a crime that (1) is vile, base, or depraved and (2) violates accepted moral standards." *Latter-Singh v. Holder*, 668 F.3d 1156, 1161 (9th Cir. 2012) (internal quotation marks omitted). In this case, the BIA held:

> It has long been settled in the Ninth Circuit that the offense of assault with a deadly weapon in violation of Cal. Penal Code § 245(a)(1) is a crime involving moral

turpitude. *Gonzales v. Barber*, 207 F.2d 398, 400 (9th Cir. 1953), *aff'd on other grounds*, 347 U.S. 637 (1954). This Board, from its earliest days, has held likewise. *Matter of G-R-*, 2 I & N Dec. 733 (BIA 1946, A.G. 1947).

Under then-existing law, the BIA's analysis was sound. We held in *Barber* in 1953 that a conviction under California Penal Code section 245—which then encompassed a range of aggravated assaults, including assault with a deadly weapon and assault with a firearm—"per se" involves moral turpitude. *Barber*, 207 F.2d at 400; *see* Cal. Penal Code § 245 (Deering supp. 1933). Similarly, the BIA held in *In re G-R-* in 1946 that the alien's conviction under section 245 involved moral turpitude. 2 I. & N. Dec. at 740. The development of both federal law and state law over the intervening six decades, however, has undermined the reasoning of those cases.

In federal law, the Supreme Court announced in 1990—decades after *Barber* and *In re G-R-* were decided—the now-commonplace "categorical approach" to determining whether a conviction meets a federal definition. *Taylor v. United States*, 495 U.S. 575 (1990); *see also Nunez v. Holder*, 594 F.3d 1124, 1129 (9th Cir. 2010) ("To determine if a crime involves moral turpitude, we first apply the categorical approach."). Relevant here,"we do not look to the facts of the underlying conviction, but rather to the state statute defining the conviction." *United States v. Laurico-Yeno*, 590 F.3d 818, 821 (9th Cir. 2010). "In order for a violation of the state statute to qualify [under the federal definition], the full range of conduct covered by the state statute must fall within the scope of the federal statutory provision." *Id.* (internal quotation marks and brackets

omitted).   The label or title that a state assigns to a crime is insufficient, *Taylor*, 495 U.S. at 590–92; the fact that other state statutes with the same title qualify under the relevant federal definition does not resolve whether the state statute at hand qualifies under the federal definition, *see, e.g.*, *United States v. Kelly*, 422 F.3d 889, 894–95 (9th Cir. 2005) (holding that, even though eluding statutes in three other states categorically met the federal definition of a crime of violence, the Washington statute did not categorically meet the federal definition).

The reasoning in *In re G-R-* and *Barber* runs counter to today's categorical analysis.  In *In re G-R-*, the BIA examined the underlying facts of the alien's conviction—now prohibited by the categorical approach—to decide that it involved moral turpitude.  2 I. & N. Dec. at 740.  In its decision, the BIA discussed a case involving different facts in which a state court had ruled that a section 245 conviction "did not involve moral turpitude."  *Id.*   The state court's conclusion did not affect the BIA's own conclusion because of the underlying facts of the alien's conviction: "We find no facts in the case before us, however, . . . which would warrant such a conclusion.  And we cannot conclude that [the state court's] decision makes it necessary for us to hold that the crime of assault with a deadly weapon in California never involves moral turpitude."  *Id.*   In today's parlance, the BIA held that it need not determine whether section 245 categorically describes a crime involving moral turpitude, because the facts of the case before it involved moral turpitude.   Whatever validity that analysis had in 1946, today's categorical approach mandates a match between the federal definition and "the full range of conduct covered by the state statute."  *Laurico-Yeno*, 590 F.3d at 821.  In sum, *In*

*re G-R-* did not hold that California Penal Code section 245 categorically constitutes a crime involving moral turpitude.

In *Barber*, 207 F.2d at 400, we held, in full: "In the federal law, assault with a deadly weapon is such a crime [involving moral turpitude]." We cited four cases in support of that conclusion, but each involved interpretation of an assault statute from a state other than California: *United States ex rel. Zaffarano v. Corsi*, 63 F.2d 757 (2d Cir. 1933) (New York); *United States ex rel. Mazzillo v. Day*, 15 F.2d 391 (S.D.N.Y. 1926) (same); *United States ex rel. Ciccerelli v. Curran*, 12 F.2d 394 (2d Cir. 1926) (same); *Weedin v. Tayokichi Yamada*, 4 F.2d 455 (9th Cir. 1925) (Washington). As noted above, the fact that other assault statutes qualify under the federal definition is, today, insufficient to establish that the assault statute at issue necessarily qualifies. *Kelly*, 422 F.3d at 894–95. In short, our reasoning in *Barber*, which relied entirely on other state statutes, was insufficient to support the conclusion that this particular state statute categorically involved moral turpitude.

State law developments, too, have undermined the reasoning of *In re G-R-* and *Barber*. As discussed above, the California courts only recently defined with precision the requisite mental state for assault. Indeed, when *In re G-R-* and *Barber* were decided, the California cases were unclear, if not contradictory, about that element of the crime. We find it implausible, at best, that the BIA in *In re G-R-* or we in *Barber* discerned the nuanced definition of the requisite mental state that the California Supreme Court announced decades later in *Williams*.

Of course, not every change in state law necessarily undermines our precedent or BIA precedent. But "intent [is]

a crucial element in determining whether a crime involves moral turpitude." *In re Solon*, 24 I. & N. Dec. 239, 242 (B.I.A. 2007). The significant developments in California law over the past six decades concerning the intent element of assault have weakened significantly the reasoning of *Barber* and *In re G-R-*. Because of the foregoing changes at both the federal and state levels, we conclude that *Barber* is no longer good law for the proposition that California Penal Code section 245(a)(1) categorically describes a crime involving moral turpitude, and we hold that *In re G-R-* is unpersuasive and not worthy of deference on this point, *see Castrijon-Garcia*, 704 F.3d at 1208, 1210–11.

Similarly, we are not persuaded that *Carr v. INS*, 86 F.3d 949 (9th Cir. 1996), offers a reasoned alternative. In *Carr*, we held that a conviction under California Penal Code section 245(a)(2)—assault with a firearm—is *not* a crime involving moral turpitude. *Id.* at 951. As an initial matter, that holding directly contradicted our binding holding in *Barber*. In *Barber*, 207 F.2d at 400, as noted, we had held expressly that California Penal Code section 245, which then encompassed a wide range of aggravated assaults *including assault with a firearm*, was "per se" a crime involving moral turpitude. Because *Carr* was a three-judge panel opinion, it violated our rule that, in the absence of an intervening Supreme Court or en banc precedent that fatally undermines the case in question, a three-judge panel is bound by an earlier precedential decision. *United States v. Gay*, 967 F.2d 322, 327 (9th Cir. 1992); *see generally Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc) (distilling our cases concerning the precedential effect of decisions by three-judge panels). There was no such intervening precedent between *Barber* and *Carr*.

*Carr*'s reasoning, in full, was:

> [The petitioner's conviction under California
> Penal Code section 245(a)(2)] is not a crime
> of moral turpitude.  *See Komarenko v. INS*,
> 35 F.3d 432, 435 (9th Cir. 1994) (precluding
> an alien convicted of violating California
> Penal Code § 245(a)(2)—the same statute
> pursuant to which [the petitioner] was
> convicted—from seeking a discretionary
> deportation waiver available to those
> convicted of crimes of moral turpitude);
> *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246
> (9th Cir. 1994) ("[t]ypically, crimes of moral
> turpitude involve fraud" as well as "acts of
> baseness or depravity contrary to accepted
> moral standards" (quotations omitted)).

*Carr*, 86 F.3d at 951 (last alteration in original).  The second
citation—to  *Gonzalez-Alvarado*—simply  recites  the
definition of a crime involving moral turpitude, so that
citation does not provide any reasoning germane to section
245(a)(2).   The  first  citation—to  *Komarenko*—and  its
corresponding parenthetical suggest that we already had
decided that section 245(a)(2) is not a crime involving moral
turpitude.  But *Komarenko* did not decide that issue.  Instead,
we held there that two provisions of the immigration statutes
did not contain "substantially identical" lists of crimes, and
we declined to consider the petitioner's specific conviction on
the ground that it was irrelevant.  *Komarenko*, 35 F.3d at
434–35; *see also id.* at 435 (declining "to speculate whether
the I.N.S. would have" concluded that the petitioner's
conviction was a crime involving moral turpitude).  To the
extent that we commented at all in *Komarenko*, we

acknowledged that the petitioner's conviction "*could* be a crime of moral turpitude." *Id.* at 435 (emphasis added).

In sum, *Carr* failed to cite *Barber*—a case directly on point and contrary to its conclusion—and the only support for *Carr*'s holding is its citation to cases that did not reach the issue. We therefore hold that *Carr* is no longer good law for the proposition that California Penal Code section 245(a)(2) does not categorically define a crime involving moral turpitude.[2]

We have found no other decision—by us or by the BIA—that has analyzed whether California Penal Code section 245(a)(1) categorically defines a crime involving moral turpitude. Turning to related precedents, we find no obvious answer to that question.

"Assault may or may not involve moral turpitude." *In re Solon*, 24 I. & N. Dec. at 241. Intent is "a crucial element in determining whether a crime involves moral turpitude." *Id.* at 242. "'[S]imple assaults' are generally not considered to be crimes involving moral turpitude . . . because they require general intent only . . . ." *Id.* at 241 (citations omitted).

---

[2] To the extent that other cases have cited *Carr* for the proposition that a conviction under section 245(a)(2) does not involve moral turpitude, those cases, too, are overruled in that limited way. *See Castrijon–Garcia v. Holder*, 704 F.3d 1205, 1212 (9th Cir. 2013) (citing *Carr* for the proposition that assault with a deadly weapon is not a crime involving moral turpitude); *Robles–Urrea v. Holder*, 678 F.3d 702, 708 (9th Cir. 2012) (same); *Nicanor–Romero v. Mukasey*, 523 F.3d 992, 1018 n.6 (9th Cir. 2008) (same); *Navarro–Lopez v. Gonzales*, 503 F.3d 1063, 1074–75 (9th Cir. 2007) (en banc) (Reinhardt, J., concurring for the majority) (same). We need not, and do not, decide whether any other conclusions reached in those cases are affected by our decision today.

Similarly, "not all crimes involving the injurious touching of another person reflect moral depravity on the part of the offender [because some require only] de minimis conduct or harm, such as offensive or provocative physical conduct or insults." *Id.* (citation omitted). "[N]either the offender's state of mind nor the resulting level of harm, alone, is determinative of moral turpitude." *Id.*

The BIA has summarized that

> a finding of moral turpitude involves an assessment of both the state of mind and the level of harm required to complete the offense. Thus, intentional conduct resulting in a meaningful level of harm, which must be more than mere offensive touching, may be considered morally turpitudinous. However, as the level of conscious behavior decreases, i.e., from intentional to reckless conduct, more serious resulting harm is required in order to find that the crime involves moral turpitude. Moreover, where no conscious behavior is required, there can be no finding of moral turpitude, regardless of the resulting harm.

*Id.* at 242.

The "presence of an aggravating factor," such as "serious physical injury or the use of a deadly weapon," "can be important in determining whether a particular assault amounts to a crime involving moral turpitude." *Id.* at 245; *see also In re Sejas*, 24 I. & N. Dec. 236, 237 (B.I.A. 2007) ("Although as a general rule, a simple assault and battery offense does not

involve moral turpitude, an aggravating factor can alter our determination."). But "the need for, and the nature of, any aggravating factor is affected by the mental state required for the conviction." *In re Solon*, 24 I. & N. Dec. at 245. For example, in *In re Sejas*, 24 I. & N. Dec. at 238, the BIA held that, although the assault statute at issue contained an aggravating factor—assault against a member of one's family or household—the statute nevertheless was not categorically a crime involving moral turpitude because it "does not require the actual infliction of physical injury and may include any touching, however slight."

Turning more specifically to crimes of assault with a deadly weapon, we find guidance that points in both directions, leaving us uncertain whether a conviction under California Penal Code section 245(a)(1) categorically involves moral turpitude. On the one hand, the BIA's statements concerning the use of a deadly weapon suggest that that factor weighs heavily in its analysis. For example, in *In re O-*, 3 I. & N. Dec. 193, 197 (B.I.A. 1948), the BIA long ago held that "an assault aggravated by the use of a dangerous or deadly weapon is contrary to accepted standards of morality in a civilized society. . . . [S]uch conduct may be looked upon as always having been inherently base . . . ." *See also id.* at 198 (noting that "assault with a deadly weapon in general has been held to be a crime involving moral turpitude"); *In re Ahortalejo-Guzman*, 25 I. & N. Dec. 465, 466 (B.I.A. 2011) (noting that "the use of a deadly weapon" is an "aggravating factor that indicates the perpetrator's moral depravity" such that the general rule that simple assaults do not involve moral turpitude does not apply). Because California Penal Code section 245(a)(1) requires the intentional use of a deadly weapon or instrument, *Williams*, 29 P.3d at 204, the BIA's reasoning in *In re O-* and *In re*

*Ahortalejo-Guzman* suggests that a conviction under the California statute necessarily involves moral turpitude.

On the other hand, it is not clear that the use of a deadly weapon is sufficient. Other factors, such as the fact that California Penal Code section 245(a)(1) requires neither physical injury nor even physical contact, *Aguilar*, 945 P.2d at 1207, suggest that the crime does not categorically involve moral turpitude. Additionally, the BIA has made clear that the presence of an aggravating factor is not always dispositive. *See, e.g.*, *In re Sejas*, 24 I. & N. Dec. at 238 (holding that a Virginia assault statute did not categorically involve moral turpitude despite the presence of an aggravating factor).

Perhaps most importantly, "the need for, and the nature of, any aggravating factor is affected by the mental state required for the conviction." *In re Solon*, 24 I. & N. Dec. at 245. California Penal Code section 245(a)(1) is a general intent crime and does not require a specific intent to injure. *Williams*, 29 P.3d at 203. Nor does the statute require that the offender actually perceive the risk created by his or her actions. *Id.* The offender must commit an intentional act and must have knowledge of the circumstances that would lead a reasonable person to perceive the risk, but the offender's subjective appreciation of the risk is not required. *Id.*

On this point, the BIA's decision in *In re Medina*, 15 I. & N. Dec. 611 (B.I.A. 1976), which involved an Illinois statute criminalizing assault with a deadly weapon, is instructive. The BIA concluded that, even though the statute permitted a conviction with only a "recklessness" mental state, the statute nevertheless involved moral turpitude. *Id.* at 613–14. Crucial to the BIA's analysis, however, was that the "person acting

recklessly must *consciously* disregard a substantial and unjustifiable risk." *Id.* (emphasis added); *see also id.* at 614 ("This definition of recklessness requires an *actual awareness of the risk* created by the criminal violator's action. . . . [T]he violator must show a willingness to commit the act in disregard of the *perceived* risk." (emphases added)). Neither *In re Medina* nor any other BIA decision instructs us definitively on how the BIA would assess a statute—like California Penal Code section 245(a)(1)—that requires knowledge of the relevant facts but does not require subjective appreciation of the ordinary consequences of those facts.

Given the circumstances, the prudent course of action is to remand this case to the BIA to consider the issue in the first instance. The BIA understandably followed *In re G-R-* and *Barber*—the controlling precedents at the time of its decision. By holding today that those cases are no longer good law, we have created error in the BIA's decision and have thwarted the ordinary procedure through which the BIA has the first opportunity to assess whether a crime involves moral turpitude. *Cf. Gonzales v. Thomas*, 547 U.S. 183 (2006) (per curiam); *SEC v. Chenery Corp.*, 318 U.S. 80 (1943).

That first opportunity to decide is especially important because, as we have noted, we ordinarily defer to the BIA's determination whether a state statute categorically constitutes a crime involving moral turpitude. *Castrijon-Garcia*, 704 F.3d at 1208. Moreover, were we to decide the issue, and were the BIA to disagree with us in a later case, we ultimately would have to decide whether the BIA's decision warrants deference. *See, e.g.*, *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 513–14 (9th Cir. 2012) (en banc) (concluding that,

pursuant to *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005), our prior construction of immigration provisions did not survive a contrary reading by the BIA). In other words, eventually we will have to decide whether to defer to the BIA's decision. If we resolved the question ourselves today, we would create uncertainty while awaiting a future case that raises the same issue. Particularly in light of our own role in creating the BIA's error, we see no persuasive justification for taking that course of action. We note, however, that a prompt decision from the BIA could help to limit the number of individuals who decide to plead guilty without proper guidance as to the immigration consequences of that decision.

Accordingly, we grant the petition and remand to the BIA to determine in the first instance whether California Penal Code section 245(a)(1) categorically constitutes a crime involving moral turpitude. We reiterate that our level of deference will depend on whether the BIA publishes its decision. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009) (en banc) (holding that *Chevron* deference applies to published decisions but *Skidmore* deference applies to unpublished decisions).

This en banc court retains jurisdiction over future petitions for review in this case.

**Petition GRANTED and case REMANDED for further proceedings.**

BEA, Circuit Judge, with whom Circuit Judge GOULD joins, dissenting:

### A.

I concur with the analysis in part A of the majority opinion which holds that the "BIA correctly held that Petitioner's conviction was for 'a crime for which a sentence of one year or longer may be imposed.'" Majority Op. at 7–8. However, as I previously explained in dissent in *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1084 (9th Cir. 2007), this court is bound by *Jordan v. De George*,[1] the

---

[1] In *Jordan v. De George*, 341 U.S. 223, 224–25 (1951), De George was an alien twice found guilty of conspiring to defraud the United States of taxes due on alcoholic beverages and was ordered deported for twice having committed a "crime involving moral turpitude," each carrying a sentence of imprisonment of over one year. The IJ ordered De George to be deported and the BIA affirmed. *Id.* at 226. De George filed a federal habeas petition, claiming the crimes did not involve moral turpitude. *Id.* The district court denied the petition. *Id.* The Court of Appeals for the Seventh Circuit reversed, finding that crimes involving moral turpitude were meant only to include crimes of violence, not evading taxes on alcohol. *Id.* at 226. The Supreme Court granted certiorari and reversed. The Court stated:

> In deciding the case before the Court, we look to the manner in which the term "moral turpitude" has been applied by judicial decision. Without exception, federal and state courts have held that a crime in which fraud is an ingredient involves moral turpitude. In the construction of the specific section of the Statute before us, a court of appeals has stated that fraud has ordinarily been the test to determine whether crimes not of the gravest character involve moral turpitude.

*Id.* at 227. The Court supported its holding that a crime involving fraud also involves moral turpitude by surveying federal and state cases. *Id.* It

only Supreme Court case that analyzes whether a crime falls into the Immigration and Naturalization Act's category of "crimes involving moral turpitude." *Jordan v. De George* gives us instruction which just does not jibe with the *Taylor* analysis employed in *Navarro-Lopez*.

In *Navarro-Lopez*, this court used the *Taylor* categorical approach to compare the elements of the California crime of accessory after the fact to "the generic elements of a crime involving moral turpitude." *Navarro-Lopez*, 503 F.3d at 1068 (9th Cir. 2007). The court then defined the generic elements of a crime involving moral turpitude as involving "conduct that is inherently base, vile, or depraved, and contrary to the private and social duties man owes to his fellow men or to society in general" and found that the California crime of accessory after the fact did not fall under this generic

---

found that in every deportation case where fraud had been proved—including the crimes of forgery, using the mails to defraud, execution of chattel mortgage with intent to defraud, concealing assets, issuing checks with intent to defraud—the court had held involved moral turpitude. *Id.* at 227–29. Further, the Court found that two courts of appeal had previously held that the crime in question had been held to be a crime involving moral turpitude. *Id.* at 228. The Court concluded:

> in view of these decisions, it can be concluded that fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude. It is therefore clear, under an unbroken course of judicial decisions, that the crime of conspiring to defraud the United States is a 'crime involving moral turpitude.'

*Id.* at 229.

definition. *Id.* at 1068, 1073. The majority now again applies the *Navarro-Lopez* framework to this case.

I respectfully submit that again the majority's approach is incorrect. "Vile, base, depraved and violates accepted moral standards" are not the *elements* of a generic crime for which we can use *Taylor*. The elements of a generic crime are objectively observable—action, intent, circumstances—not judgments that label such facts. Whether conduct is "depraved" is not objectively observable. Instead, "vile, base, depraved and violates accepted moral standards" is the viewer's *description* of crimes bearing the appellation "crimes involving moral turpitude." This description of the appellation "crimes involving moral turpitude" requires subjective evaluation of the elements of the state statutory crime to determine whether the crime requires conduct which was "depraved" or "contrary to accepted moral standards."

In the federal criminal law, found in Title 18 of the United States Code, there is *no* "crime involving moral turpitude." It would thus be impossible to indict a person for having committed a "crime involving moral turpitude," quite apart from considerations of unconstitutional vagueness. In a word, a "crime involving moral turpitude" has no *elements*.

One cannot apply *Taylor* to compare the elements of a state statutory crime (assault with a deadly weapon) to the description ("vile, base, or depraved and violates accepted social standards") of an appellation ("crimes involving moral turpitude"). There is no objective matching as is the case when determining if both the federal definition and the state crime involve the same mens rea or the same element of risk of injury to another. Applying *Taylor* to determine whether a crime involves moral turpitude is like comparing apples

(objective elements of a crime) to oranges (subjective evaluation of aspects of a crime). This distinction is precisely why, in *De George*, the Court ruled that stare decisis is the correct method of determination of what crimes fall into the appellation of "crimes involving moral turpitude."

Under *De George* I would look to the weight of federal and state court authority, just as the BIA here did and just as our circuit did in *Barber*, and find that assault with a deadly weapon is a crime involving moral turpitude. Thus I would deny the petition for review.

## B.

The majority holds that on remand the BIA must apply the *Taylor* categorical approach. However, if I were somehow to apply the *Taylor* categorical approach, I would do so differently from the majority, but still deny the petition.

"Crimes involving moral turpitude" is a category analogous to the categories of "crimes of violence," "aggravated felonies," and "violent felonies." *See Leocal v. Ashcroft*, 543 U.S. 1, 3–5 (2004) (crimes of violence)[2];

---

[2] In *Leocal v. Ashcroft*, a Haitian citizen who was a lawful permanent resident of the United States was convicted of driving under the influence of alcohol (DUI) and causing serious bodily injury under Florida law and sentenced to 2.5 years in prison. 543 U.S. 1, 3–4 (2004). The INS initiated removal proceedings against him pursuant to INA § 237(a), which states that any alien who is convicted of an "aggravated felony" may be removed. *Id.* at 4. Section 1101(a)(43) of the INA defines "aggravated felony" as including a "crime of violence." *Id.* at 4–5. A "crime of violence" is defined in 18 U.S.C. § 16. The immigration judge found that a Florida DUI offense was a crime of violence. *Id.* at 5. The BIA affirmed. *Id.* at 5. The Eleventh Circuit denied Leocal's petition for

*Kawashima v. Holder*, 132 S. Ct. 1166, 1170–73 (2012) (aggravated felonies)**[3]**; *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1683, 1687 (2013) ("aggravated felonies")**[4]**; *James v. U.S.*,

---

review. *Id.* The Supreme Court granted certiorari and reversed. *Id.* at 6. The Court examined the statute and held that a violation of Florida's DUI statute is not a crime of violence. *Id.* at 10.

**[3]** In *Kawashima v. Holder*, a husband and wife from Japan who were lawful residents of the United States pleaded guilty to submitting a false tax return. 132 S. Ct. 1166, 1170 (2012). Following the convictions, the INS charged the Kawashimas with being deportable as aliens who had committed an aggravated felony. *Id.* In the INA, "categories of offenses that qualify as 'aggravated felonies' for the purpose of deportation" include an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000 or is a tax evasion in which the revenue loss to the Government exceeds $10,000." *Id.* at 1171. The IJ ordered the couple's removal, and the BIA affirmed. *Id.* On appeal, the Ninth Circuit held that Kawashimas had both committed an aggravated felony, granted the petition, and remanded the case to the BIA. *Id.* The Supreme Court granted certiorari and affirmed the Ninth Circuit. The Court used a categorical approach and found that the tax crime involved fraud or deceit. *Id.* at 1173.

**[4]** Adrian Moncrieffe was a Jamaican citizen who came to the United States illegally. *Moncrieffe v. Holder*, 133 S.Ct. 1678, 1684 (2013). Moncrieffe was convicted under a Georgia statute for possession of drugs. *Id*. Subsequently, DHS started deportation proceedings, arguing that the Georgia conviction constituted an "aggravated felony." *Id.* at 1682. The INA defines an "aggravated felony" as including "illicit trafficking in a controlled substance." *Id.* at 1683. An IJ ordered Moncrieffe removed. *Id*. The BIA affirmed. *Id.* The Eleventh Circuit denied Moncrieffe's petition for review, finding that the Georgia statute was equivalent to a federal drug felony. *Id.* The Supreme Court granted certiorari and reversed. *Id.* The Supreme Court applied the categorical approach, noting that this "categorical approach has a long pedigree in our Nation's immigration law." *Id*. at 1685. But the Court also stated that the categorical approach applies to "generic crimes." *Id*. at 1691. The court compared the Georgia crime with the generic crime of "illicit trafficking

550 U.S. 192, 195, 203–04 (2007) ( "violent felonies").[5] However, for each of these categories Congress either defined the category or gave examples of crimes that fall into the category. *Id.* But Congress has neither given examples of "crimes involving moral turpitude" nor defined required elements for this category. All we have are judicial decisions which describe which crimes involve moral turpitude. *See De George*, 341 U.S. at 227.

Thus, if we are to use the *Taylor* categorical analysis to determine whether California Penal Code § 245(a)(1) is a crime involving moral turpitude, I think we would have to take a two step approach. First, we would have to determine whether there is a general federal crime of assault with a deadly weapon not including a firearm with which to compare California Penal Code § 245(a)(1). There is no

---

in a controlled substance" and found that Moncrieffe was not convicted of an aggravated felony. *Id.* at 1687.

[5] Alphonso James pleaded guilty to one count of possessing a firearm after being convicted of a felony. *James*, 550 U.S. at 195. James had three prior felony convictions including a Florida conviction for *attempted* burglary. *Id.* at 196. The district court held that attempted burglary was a violent felony and James was subject to a mandatory sentence under the Armed Career Criminal Act. *Id.* The Eleventh Circuit affirmed. *Id.* The Supreme Court granted certiorari. *Id.* The Supreme Court held that a "violent felony" is defined by 18 U.S.C. § 924(e)(1) as a crime "that has as an element the use, attempted use, or threatened use of physical force against the person of another *or* is burglary, arson, extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* at 196. The Court applied the *Taylor* categorical approach and found that the Florida crime of attempted burglary posed a serious risk of physical injury to another. *Id.* at 204.

federal statute comparable to § 245(a)(1).**[6]**  That is the first impediment to the use of *Taylor*.  Second, if there were an equivalent federal crime, we would need to search for judicial decisions to determine whether a case had held that federal crime to be, or not to be, a crime involving moral turpitude.  Again, there is not such a case—even as to the federal crime of assault with a deadly weapon including a firearm, 18 U.S.C. § 113(a)(3).  That is the second impediment against using the *Taylor* categorical approach.  Absent such precedent as to an equivalent federal crime, I would examine precedent regarding whether equivalent state crimes had been held to be crimes involving moral turpitude, as required by *De George*, 341 U.S. at 227, and compare the elements of those crimes to the crime in question here, § 245(a)(1).  That is more productive.  We have already held that § 245(a) is a crime involving moral turpitude,**[7]** and while the majority finds

---

**[6]** Title 18 U.S.C. § 113(a)(3) codifies assault with a deadly weapon, but *includes* firearms, unlike California Penal Code § 245(a)(1) which excludes firearms.

**[7]** The majority overrules *Barber* because *Barber* relies on four federal cases for the proposition that assault with a deadly weapon is a crime involving moral turpitude under federal law and "the fact that other assault statutes qualify under the federal definition is, today, insufficient to establish that the assault statute at issue necessarily qualifies."  Majority Op. at 14.  It is true that the court in *Barber* did not compare the elements of § 245 to the elements of the federal cases it cited.  Rather, in *Barber* we considered that, "[h]ere we are faced with the federal question of whether the crime involves such moral turpitude as to show that the alien has a criminal heart and a criminal tendency—as to show him to be a confirmed criminal."  That question is similar to the one the majority asks today.  Further, if this court overrules all moral turpitude precedent prior to 1990, when the Supreme Court decided *Taylor*, because the cases did not compare elements of two crimes as required by *Taylor*, there will be no guideposts by which to judge what crimes qualify under the common-law

it "implausible" that this court in *Barber* discerned the correct mens rea, the majority can point to nothing in the *Barber* opinion to prove their assumption.  *Barber*, 207 F.2d at 400; Majority Op. at 14.  Thus, I would deny the petition.

C.

The majority skips this analysis of previous judicial decisions and simply determines that crimes that necessarily include conduct which it finds is "vile, base, or depraved and against accepted social standards" fall into the category of "crimes involving moral turpitude."  This approach ignores *De George*, is impossible to apply objectively, and is not binding on the BIA because the Ninth Circuit is defining a category left undefined in the INA by Congress.  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.").  Thus, on remand, if the BIA cannot find that an equivalent federal or state crime of assault with a deadly weapon has been held, or not held, to be a crime involving moral turpitude, it can create its own definition of a crime involving moral turpitude for purposes of the INA.

---

term "moral turpitude."  We cannot do that consistent with *Jordan v. De George*, *supra*.